Callahan v. Patterson.

[61] Callahan v. Patterson and Patterson.

Where a husband and wife, in consideration of a debt due from the wife before marriage and of necessaries furnished after marriage, at the instance of the wife and without any constraint, executed a bond for title to separate property of the wife, but the wife was not privily examined, according to the statute, owing to her sickness and the absence of any officer competent to take such privy examination: Held, In an action against the husband and the heir of the wife, which prayed for a specific performance and also for general relief, that a specific performance could not be decreed, and that the evidence was insufficient to entitle the plaintiff to relief under the general prayer.

The privy examination of the wife apart from her husband is indispensable to the conveyance of her separate property. (Note 11.)

The separate property of the wife is liable for her debts contracted before marriage.

The husband is bound to support the wife out of his own property, if able to do so, without resorting to her separate property.

If the husband is not able to support his wife and children, her separate property may be resorted to and be made liable for that purpose.

Where a jury is waived, the judge is invested with the same attributes which belong to a jury.

The conveyance of a married woman, made under the forms of law, is as valid as if made by a single woman; and its effects can be avoided only by showing mistake, fraud, or duress. The purchaser has no concern with the investment of the proceeds. (See Op. of Judges Hemphill and Wheeler.)

Appeal from Guadalupe. This suit was brought by the appellant for a specific performance of a contract for the sale of one hundred and sixty acres of land purchased by the appellant from the defendant James D. Patterson and Sarah E. Patterson, his wife, since dead. The petition sets out the purchase of and payment for the land, but does not allege the amount paid; that the land was the separate property of the wife; that a part of the money was applied to the payment of a debt for necessaries furnished the said Sarah before her marriage, and the balance for necessaries provided subsequently to the marriage; that the defendant James D. Patterson and his wife [62] executed their bond in the penalty of $1,000, conditioned to make good title; that the bond was not acknowledged by the wife, owing to the fact of her being in bad health, and that she would have had to go fifteen miles to acknowledge it in the manner prescribed by law, but that she had executed it voluntarily; that the said Sarah left one child, Robert Patterson, the offspring of her marriage, who is a minor, and prayed to be made a party by his guardian ad litem. The bond is made an exhibit, and prayed to be taken as part of the petition. The petitioner alleges that the defendant is a poor man, and scarcely able to respond in damages for the breach of his bond to the petitioner. He prays for a specific performance of the contract, and that all the title in the said James D., the husband, and Robert, the minor heir of the said Sarah E., be vested in the petitioner, and for general relief. The answer of the defendant James D. Patterson admits all the facts stated in the petition. The same, as to the facts, is admitted by the guardian ad litem of the minor, Robert, but he insists that those facts are not sufficient in law to entitle the petitioner to a decree in his favor. The parties waived a jury, and submitted the case to the judge on the law and the evidence. It was in evidence, as appears from the statement of facts as sworn to by one of the subscribing witnesses to the bond attached to the petition, that it was executed by the parties; that Mrs. Patterson signed the same by her own consent, without acting under the influence of her husband; on the contrary, her husband was unwilling to sell, and he was persuaded to the same by his wife; the consideration money was paid, and a part of it was appropriated to the payment of a debt owing by Mrs. Patterson before marriage. It was also proved that Mrs. Patterson was anxious and willing to

31

Callahan v. Patterson.

sell the land in controversy; that $20 of the purchase-money was appropriated to the payment of a debt owing by Mrs. Patterson before marriage, and the balance for necessaries furnished her afterwards; that the defendant is poor, and unable to respond in [63] damages. Judgment was given for the defendants, and plaintiff appealed.

*Vanderlip* and *Gordon*, for appellant.

I. The court should have granted the specific relief prayed for. The act of 1846, (vol. 10, p. 156,) providing a mode for the conveyance of the separate property of married women, is directory only in its terms, and the certificate presented is only evidence apparent on the face of the instrument that it has been legally and properly made. When the evidence of the requisition of the statute having been complied with is full and complete, although there be no formal examination and certificate thereof, the reason and spirit of the law is fully satisfied. In this opinion we are borne out by the act of the Legislature of 1846 regulating proceedings in the District Courts, (vol 10, pp. 387–390,) which makes only this distinction between deeds, &c., which are proved and acknowledged and those which are not: proof of their execution only is required to establish their validity; and it occurs to us that the rule of authentication should and does apply with a much greater degree of laxity to an executory contract (such as this) where the maturing of a contract necessarily opens it to a full, legal, and equitable investigation.

II. Should the court, however, hold the first ground of error alleged to be not well grounded, then the court below should have given the plaintiff his full equity under the prayer for general relief, it being the *glory* of that *prayer* to afford him the relief to which he has a right; and the court should afford him that relief under the general prayer, provided it is such relief as is agreeable to the case made out by the petition. (Story Eq., Pl., sec. 40; Mitf. Eq. Pl., 38–45; Cooper Eq. Pl., 13, 14; Barton's Suit in Eq., 40, 41; 4 Madd. R., 408; 5 Ves. R., 495; 13 Id., 119, 120; 2 Pet. R., 595.) Then, admiting that the plaintiff was entitled to relief under the general prayer, the court should have given judgment for the plaintiff [64] for the consideration paid, with a lien on the land to secure its payment; for we presume there is no principle in legal or equity jurisprudence better established than that the vendor has a lien on the land sold for security of payment of the purchase-money, "as likewise" the vendee for the security of the purchase-money paid, when it does not affect the rights of third parties without notice. (4 Kent, 151, 154; 2 Wash. R., 191; 3 Bibb. R., 183; 1 Johns. Ch. R., 308; 1 Paige R., 20; 3 Id., 513; 7 Wheat. R., 46; 1 Mason C. C. R., 191; 1 Conn. R., 468; 1 Ham. Ohio R., 318; Briscoe *v.* Bronaugh, 1 Tex. R., 326.) And the separate estate is bound for the debts of the wife contracted for necessaries. (Acts, vol. 10, p. 78, sec. 5.)

Lipscomb, J. The first question presented for our consideration is, can the specific relief prayed in the petition be granted?

Second. Is the petitioner entitled to any relief?

It seems to have been a favorite object with the framers of our Constitution to secure to the wife her separate property; and in the 19th section of the General Provisions, they have provided that all "property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterwards by gift, devise, or descent, shall be her separate property; and laws shall be passed more clearly defining the rights of the wife in relation as well to her separate property as that held in common with her husband." The first legislation on this subject, under the Constitution, will be found in the act of the first State Legislature, entitled "An act defining the mode of conveying property in which the wife has an interest." It provides: "Where a husband and his wife have signed and sealed any *deed* or *other writing* purporting to be a conveyance of any estate or interest in land, slave or slaves, or other effects, the separate property of the wife or of the homestead of the family, or other property exempted by law from execution, if the wife appear

## Callahan v. Patterson.

"before any [65] judge of the Supreme or District Court, or notary public, and "being privily examined by such officer apart from her husband, shall declare "that she did freely and willingly sign and seal the said writing, to be then "shown and explained to her, and wishes not to retract it, and shall acknowl- "edge the said deed or writing so again shown to her to be her act, thereupon "said judge or notary shall certify such privy examination, acknowledgment, "and declaration, under his hand and seal, by certificate annexed to said writ- "ing, to the following effect or substance," &c.

It is manifest that the contract has not been executed and authenticated in the mode required by the act of the Legislature just cited to create any binding obligation on the wife, or to justify this court in divesting her heir of title in his mother's land. But we are asked to give an equitable construction to the act, and to consider that as done that was intended by the parties to be done in the face of and in contravention of an express statute. We disclaim any right so to contravene and nullify such statute. Up to the last moment, and even when about to acknowledge the contract according to the statute, she has a right to retract and repudiate it. This statute, even when strictly observed, affords a flimsy protection to the separate property of the wife. Such is the influence the husband acquires over the wife, that however worthless and prof- ligate he may be, he would be able generally to procure her assent to transfer her property with all forms required by the statute; and the proceeds would be spent by him in riot and debauch, if so inclined. It may well be questioned, however, if a transfer with the forms required would pass all her rights in the property so transferred, unsupported by a consideration inuring to her benefit. It seems to me that the spirit of the Constitution, in giving and securing what- ever separate property she may own, would be entirely defeated if her property could be conveyed without her receiving the benefit. Such a construction would not be repugnant to nor inconsistent with the provisions [66] of our statute; because, when necessary to be sold for her benefit, the statute would afford the requisites to be observed in such transfer. I do not wish to be un- derstood as deciding this last question, as it is not embraced in this case nor necessary to a decision. I have only referred to it, in connection with the point arising on the contract sought to be enforced, for the purpose of eliciting investigation on a question believed to be entitled to great consideration.

We will next consider whether the plaintiff is entitled to any relief under his petition. We will lay down three propositions that will have a bearing on the question we are discussing, and they are believed to be incontrovertible:

First. That the separate property of the wife is liable for her debts contracted before coverture.

Second. That the husband is bound to support his wife out of his own prop- erty, if able to do so, without resorting to her separate property.

Third. That if the husband is not able to support his wife and her children, her separate property may be resorted to and made liable for that purpose.

For authorities to support these propositions see Florid. R., 93; 2 Paige Ch. R., 13; 4 Desau. R., 20; 1 McCord Ch. R., 369. Under the first proposition it is found from the petition and the evidence that a debt of $20, incurred by the wife before coverture, was paid as a part of the consideration of the con- tract. Consequently that amount could claim satisfaction out of her separate property, if proved to the satisfaction of the court below. Under the second proposition the evidence is far from satisfactory. It is that he was a very poor man. This is too vague and indefinite; the wants of poor people are quite limited, and they are not apt either to indulge in extravagance or wish to do so. The issue to be inquired into, from the evidence, is whether he was able to support his wife and children after marriage; and this should be answered in the affirmative or the negative. If answered in the negative, then, under the [67] third proposition, it would follow that the separate property of the wife would be held liable for the necessary support of herself and her child. The testimony as to furnishing these necessary supplies by the proceeds of the contract is as vague and indefinite as to the ability of the husband to support

Callahan v. Patterson.

her and her children by his own means. The petition does not disclose the amount of the consideration for the contract nor the amount applied to the necessities of the wife, nor does it appear from the evidence. This ought certainly to have been averred and proved. If these facts had been shown, so far as appropriated to the previous debts of the wife before coverture, her property would be liable; and so far as appropriated to her absolute necessities, if the inability of the husband had been found, the separate property would also have been liable to pay. But the testimony was not certain as to any necessary fact but the $20 for a debt before coverture. Now, if the evidence had been offered to a jury to support the facts essential to a recovery, and they had found a verdict for the defendant, could the verdict be set aside in this court by the observance of anything like uniformity and consistency in our decisions? It has been before said that nothing was proved with anything like certainty to a common intent but the appropriation of the $20; and as the amount of the consideration money was neither averred nor proved, might not the jury have fairly inferred that this sum, being so inadequate for the one hundred and sixty acres of land, cast a shadow on the whole transaction, that justified them in discrediting the evidence and concluding that the contract was without consideration? If we believe that, from the evidence, such would have been the legitimate conclusion of the jury, we cannot say that the judgment in the case was contrary to the evidence; because, a jury being waived, the judge was substituted to the same attributes that would have been vested in the jury. The extent of the liability of the husband on his bond is not adjudicated, because we have not believed it presented by the record. Whatever rights the [68] plaintiff may have against him can be fairly adjudicated in a case where that liability is asserted and sought to be enforced. The judgment is affirmed without prejudice to the plaintiff. If he has good cause of action, and grounds to subject the separate property of the wife, those rights can be asserted in another action.

HEMPHILL, CH. J. I dissent from the proposition which questions whether a transfer by a wife of her separate property, under the forms prescribed by the statute, would pass all her rights to the property, unsupported by a consideration inuring to her benefit. The statute expressly declares that such conveyance shall pass all her right, title, and interest therein conveyed; and I am not apprised of any rule or principle of law or equity by which an exception is made to this general provision.

The rule seems to be that the conveyance of the *femme covert*, made under the forms of law, of her separate property, is as valid as if made by a *femme sole* or other person having capacity in law to contract; and its effect can be avoided only by showing mistake, fraud, or duress. (Bein v. Heath, 6 How. U. S. R., 241.) The purchaser has no concern with the investment of the proceeds of the sale. Their misapplication may raise an equity against the husband, which, in proper cases, will be enforced out of his estate; but this will not invalidate the conveyance as in favor of the purchaser. The powers of *femmes covert* over their separate estate, created by law, and over its disposal, when attempted in the mode pointed out by the statute, and their powers, as defined by the doctrines of equity jurisprudence, over their separate estates, created by deed, have been discussed to some extent in the case of Cartwright v. Hollis and Wife and Hollis and Wife v. Francois and Border, decided at this term; and to them I refer for a more full exposition of my views touching the point raised by the proposition in question.

[69] WHEELER, J. I concur with the chief justice upon the point presented in his opinion in this case, and in the reference to the opinion of this court in the cases cited; in which also I fully concur.

Judgment affirmed.

NOTE 14.—Cross v. Everts, 28 T., 523; Fitzgerald v. Turner, 43 T., 79.