HOWARD & HUME, ADMINISTRATORS, ETC., v. J. G. WINDOM.

No. 128.

1. Limitation—New Promise—Pleading.
When a new promise is relied upon to avoid the plea of limitation to the original debt, the new promise is the cause of action, and must be declared on ...................................................... 565

2. Same—Amendment.
When a new promise is pleaded by amendment, limitation runs until the filing of such amendment ......................................... 565

3. Supplemental Petition—Pleading the New Promise.
Plaintiff by a pleading endorsed "supplemental petition" set up a new promise. Exceptions were sustained to the pleading for reason that the matter should have been pleaded by an amended original petition. The petition was corrected by an amended original petition; not, however, filed until after the statutory term in bar had elapsed. *Held*, that the pleading of the new promise in the defective supplemental petition stopped the running of the statute ......................... 566

4. Sufficiency of New Promise—Acknowledgment of Debt.
An unqualified acknowledgment of an existing debt implies a promise to pay it, and is sufficient, unless accompanied by some expressions showing an unwillingness to pay .................................... 566

5. Acknowledgment.
An acknowledgment in general terms will be held to apply to the debt sued on, unless the defendant show that there was another debt due by him to the plaintiff ..................................... .......... 566

6. Nugatory Condition.
Defendant in writing promised to pay in full if plaintiff's intestate would consent for him to sell the land for which the note declared on was given. Such consent was not necessary for the purpose. The condition being nugatory, it would seem· that compliance with it was not essential to give validity to the promise ............................ 566

7. Construction—New Promise.
The tendency of modern decisions has been to construe the statute (giving effect to new promise, etc.) more liberally in favor of debtors; and not to torture vague expressions into acknowledgments or promises, when the language does not clearly import such construction ........................................................ 567

8. Same.
See letters written by defendant construed to be in each a new promise, and the last taking the debt out of the effect of the statutory limitation of four years ................................................. 564, 567

9. Acknowledgment of Indebtedness.
It would seem that when a defendant clearly acknowledges in writing that the debt is a just and subsisting obligation, and evinces that although he is unable to pay at the time, he has no desire or purpose to repudiate any part of it, every evil which the statute of limitations was intended to remedy is obviated, and that no reason exists why the demand should not be enforced ........... ...................... 567

**10. Same—Promise While Action not Barred.**

When there is an enforceable existing indebtedness at the time an acknowledgment in writing is made, the probability that the defendant intended to repudiate the debt in any manner or for any amount is less than it would have been had the claim been then barred.............. 567

**11. Vendor's Lien.**

The lien being an incident to the debt for the purchase of the land, when the debt was revived the lien was also revived...................... 567

ERROR to Court of Civil Appeals for Fifth District, in an appeal from Collin County.

The opinion gives a full statement of the case.

*Evans & Evans,* and *Throckmorton & Garnett,* for plaintiffs in error.

1. The assertion of a demand in a court having jurisdiction of the subject matter and of the parties, even though irregular and defectively pleaded, will suspend the running of the statutes of limitation. Rules for the Dist. Ct., 10, 15; Killebrew v. Stockdale, 51 Texas, 529; Becker v. Railway, 80 Texas, 475; Kaufman v. Wooters, 79 Texas, 214; Hill v. Clay, 26 Texas, 650; Kinney v. Lee, 10 Texas, 155.

2. The plaintiffs were not concluded by the election of the relief asked in their original petition to insist upon the recovery of the land; and after the original answer was filed setting up title in defendant under the deed from Bean, and by limitation, the plaintiffs, in reply to such pleading, could set up the note or the acknowledgment of the debt in the defendant's letter, and ask for a judgment for the debt and the foreclosure of the lien in the alternative; and the effect of filing such plea was to stop the running of the statute, even though the pleading was bad on general demurrer. Porterfield v. Taylor, 60 Texas, 264; Peters v. Clements, 46 Texas, 114; Chapman v. Sneed, 17 Texas, 428; Cattle Co. v. Boone, 73 Texas, 556.

3. The exception to the first amended original petition was not well taken. The statute of limitation, if not suspended by the filing of the original petition, was suspended by the filing of the supplemental petition July 20, 1891, and the cause of action set out in the amended original petition showed that it was not barred.

4. The vendor's lien existed to secure the payment of the purchase money on the land, as against the appellant, so long as he kept the debt alive by his acknowledgments and promises. The appellant having kept the debt from the operation of the statute by his admission in writing, and it being for the purchase money due on land, the lien on the land to secure the debt could not become barred. Fievel v. Zuber, 67 Texas, 275; Goldfrank, Frank & Co. v. Young, 64 Texas, 432.

5. If the new promise admitted that the claim was a subsisting debt at

the time it was made, and was unaccompanied by any circumstances repelling the presumption of the defendant's willingness or intention to pay the same, such acknowledgment would be sufficient to remove the bar of the statute, and his liability and consequent promise are necessary legal inferences. A letter containing an unqualified and direct admission of a previous subsisting debt which the party is liable and willing to pay will repel the bar interposed by the statute. Webber v. Cochrane, 4 Texas, 31; Russ v. Cunningham, 16 S. W. Rep., 446; Henry v. Roe, 18 S. W. Rep., 806; Walsh v. Mayer, 111 U. S., 31; Bell v. Morrison, 1 Pet., 362.

6. As the defendant did not attempt to show that the acknowledgments referred to some other debt due from him to Bean, the law presumes that such acknowledgments referred to the debt sued on, and none other. Ross v. Cunningham, 16 S. W. Rep., 20; Mitchell v. Clay, 8 Texas, 447.

*Johnson & Son*, for defendant in error.— 1. The object of a supplemental petition, as contradistinguished from an amended petition, is to set up additional facts supporting some allegation in the original petition. It is allowed for the purpose of alleging new facts in support of the original cause of action, not to allege a new cause of action. Rules 3, 5, and 15, 47 Texas, 616, 619; Richie v. Levy, 69 Texas, 135.

The question raised by this assignment is, that the appellees having in their original petition sued for the recovery of the land by right of the superior title being in their intestate at the time of his death, can they, under the rules of pleading, declare on a new cause of action and ask a different relief in a supplemental petition, from the action set up and the relief asked in the original petition? To allow such a rule of practice would be to obliterate all distinction between supplemental pleadings and amended pleading. The courts evidently intended that there should be a wide difference between the two; it being the office of a supplemental petition to supplement or aid the original petition, by the allegation of new facts tending to support the original cause of action; and the office of an amended petition being to change, add to, or withdraw something from that which has been previously pleaded, as to allege a new cause of action and facts supporting it. The original cause of action being for the recovery of the land, we submit that it was error to hold that appellees could by supplemental petition set up a new cause of action, and thereby stop the running of the statute of limitations as to the new cause of action thus set up.

2. If the alleged new promise to pay, as alleged in plaintiffs' first amended original petition, was barred by the statute of limitations at the time of filing said amended petition, then the defendant was not liable on said alleged new promise. Bigham v. Talbot, 63 Texas, 271.

3. The court erred in overruling defendant's second and sixth special

exceptions to plaintiffs' first amended original petition, because there being no express vendor's lien reserved in the deed, whatever implied lien the vendor may have had was barred long prior to the filing of said amended petition. Ransom v. Brown, 63 Texas, 188; Pitschki v. Anderson, 49 Texas, 1; Bynum v. Preston, 69 Texas, 287; Riggs v. Hanrick, 59 Texas, 570.

4. An acknowledgment, to relieve a claim from the operation of the statute of limitations, must contain an unqualified admission of a just subsisting indebtedness, and express a willingness to pay it. The acknowledgment must not be conditional. If it is conditional, it must be shown that the conditions have been fulfilled before the debtor can be held liable. Coles v. Kelsey, 2 Texas, 555; Webber v. Cochrane, 4 Texas, 36; Smith v. Fly, 24 Texas, 353; Krueger v. Krueger, 76 Texas, 178; Leigh v. Linthicum, 30 Texas, 103; McDonald v. Grey, 29 Texas, 83; Madox v. Humphreys, 24 Texas, 196; Mitchell v. Clay, 8 Texas, 443; Manning v. Wheeler, 13 N. H., 486; Thayer v. Mills, 14 Me., 300.

5. There being no express lien reserved in the deed, the implied lien became barred at the same time that the note given for the purchase price of the land became barred. Ransom v. Brown, 63 Texas, 188; Pitschki v. Anderson, 49 Texas, 1.

GAINES, ASSOCIATE JUSTICE.—Thomas C. Bean in his lifetime sold to J. G. Windom, the defendant in error, a tract of land, for the purchase money of which the latter executed his promissory note, payable December 25, 1881. No express lien for securing the note was reserved either in the deed or in the note itself; but an implied lien was created by operation of law. The note has never been fully paid.

Bean died in July, 1887, and in September, 1890, the plaintiffs in error were appointed administrators of his estate. On the 12th day of March, 1891, they instituted this suit, which was originally an action of trespass to try title, against the defendant in error for the recovery of the land so sold by Bean to him.

The defendant having answered, on the 20th day of July in the same year they filed a supplemental petition, alleging, that the defendant had given the note now in controversy for the purchase money of the land; that it had never been paid in full; and that on February 1, 1887, he had written their intestate a letter, in which he had acknowledged the justness of the debt; and praying that in the event it should be held that they were not entitled to recover the land, that they should have a judgment for the unpaid balance of the note, and a decree enforcing a lien on the land for its payment.

An exception to the supplemental petition, upon the ground that the matter therein contained was not properly set up in a pleading of that character, was sustained; and thereupon the plaintiffs filed an amended

original petition, alleging the same facts averred in the supplemental petition, and in addition thereto, that the defendant had written Bean two other letters, dated respectively January 8, 1886, and December 9, 1886, acknowledging the justness of the demand.

The defendant excepted to the amended petition, on the ground that it showed upon its face that the debt was barred. The court overruled the exception, and the facts alleged having been established upon the trial, gave judgment for the plaintiffs, with a decree enforcing the lien.

The letters relied upon to remove the bar of the statute of limitations are substantially as follows:

"FARMERSVILLE, COLLIN COUNTY, January 8, 1886.
"*Thomas C. Bean:*

"I take my pen in hand to answer your kind letter that came to hand the other day. Was glad to hear from you. I wrote to you that I would pay you some money the last of this month. I have got some due me in Georgia, and the parties that owe me say they will pay it. I thought that I would have got it before now. If you don't come down here I will bring it to you as soon as I get it. If I don't get it I will try to borrow some for you. I will do my best, for you have not pushed me. I have had a heap of bad luck for two years, but where there is a will there is a way, so I will keep trying for the better," etc.

"FARMERSVILLE, December 9, 1886.

"DEAR FRIEND: I take my pen in hand to write you a few lines to let you know how I am getting along. I have not heard from you in sometime. I wrote you a letter sometime back, and I have not heard from you. I want you to write me how much I owe you, and let me hear from you by return mail. I will let you know how much I can pay you in my next letter. I will come up there soon to see you. So I will close for this time."

"February 1, 1887.
"*Mr. Thomas C. Bean:*

"I received your letter to-day, and was glad to hear from you. This is the first time I have got a letter from you in sometime. I had 'rote' you two letters since I got any from you. I want you to write me [the] very less you can take for the note that you hold against me; for I don't know how to pay only to sell the land, and if I can't sell it and make it pay for itself, for I have not got the money and can't get it at no less than 18 per cent, and you know that wont do. If you are willing for me to sell it, I think I can pay you. I want you to write to me as soon as you get this letter. I had so much bad luck I lost $500 last year. I have worked hard to pay you, for you have been as kind to me as a father. I have got all of my land well improved. Write me as soon as you get this. Yours respectly," etc.

Administration not having been granted on Bean's estate during the first twelve months after his death, under our law the running of the statute of limitations was suspended during that period. But it is apparent from a short calculation that the letter of January 8, 1886, of itself, can not avail the plaintiffs in this suit. More than five years had elapsed from its date when it was first declared on, and even when the supplemental petition was filed. So also more than five years intervened between the date of the second letter (December 9, 1886) and the filing of the amended petition on February 16, 1892, in which for the first time the promise contained in that letter was alleged. The supplemental petition of July 20, 1891, contains no averment with reference either to the first or second letter.

It is well settled in this State, that in cases of this character the new promise is the cause of action, and that in order for the plaintiff to avail himself of it in maintaining his suit, it must be declared on as such in his petition. Coles v. Kelsey, 2 Texas, 541.

Following this doctrine to its logical conclusion, this court held, that when a new promise is pleaded by amendment, the statute of limitations runs until the filing of the amendment. Erskine v. Wilson. 20 Texas, 78. The implied promise contained in the second letter was therefore barred when it was first declared on in the suit.

An action based upon the third letter was also barred when the amended petition was filed, unless the running of the statute was suspended by the filing of the supplemental petition.

It is earnestly insisted on behalf of defendant in error, that because the promise contained in that letter was not pleaded in its proper place, and because that pleading was stricken out upon exception, it should be treated as of no effect for any purpose, and that the promise should be deemed as having been set up for the first time in the amended original petition. But in this conclusion we do not concur.

The supplemental petition, as it is named, contains all the substantial averments of a petition upon a new promise, with an appropriate prayer for relief; but does not contain all of the formal allegations required by the statute and rules of this court, either for an original or an amended original petition. If filed as an amended original petition, it should have been held bad upon special exception.

But in such a case a subsequent amended petition, which complied with the statute and rules, could not have been deemed a new suit. Although the first amendment had been held bad upon general demurrer, its filing would still have been properly treated as the commencement of the action. Kaufman v. Wooters, 79 Texas, 205, and cases there cited.

The sole difference between the case supposed and that now before us is, that here the pleading is endorsed as a supplemental petition, and not as an amended original petition, as the rules required. It was in sub-

stance an amended original petition, setting up a new cause of action. The trial court properly treated it as such, as well by holding it bad for want of form, as by considering it in substance as the institution of the suit upon the new promise therein alleged.

Does the letter of February 1, 1887, contain, with its qualifications, such an acknowledgment of the original, continued, and existing justness of the demand as will remove the bar of the statute? This is the important question in the case, and it is one which we have had difficulty in determining. The rule in this court is, that an unqualified acknowledgment of an existing debt implies a promise to pay it, and is sufficient, unless the acknowledgment be accompanied by some expressions indicative of an unwillingness to pay. Webber v. Cochrane, 4 Texas, 31. The inference from the writing in question is that it was in reply to a letter from Bean demanding payment of the note. The indebtedness evidenced by the note is the only subject matter treated of or alluded to in the defendant's reply, and the inference is that it was in reference to that matter that Bean had written. The writer also refers to two former letters, without indicating any desire to retract anything that was said in either of them. In the absence of something to show to the contrary, they are presumably the two former letters introduced in evidence.

An acknowledgment in general terms will be held to apply to the debt sued on, unless the defendant show that there was another debt due by him to the plaintiff. Mitchell v. Clay, 8 Texas, 443. Therefore, the letters must be considered as referring to the note in controversy in this suit.

The first of these promises to pay Bean something if he can raise the money, and also promises to do his best to pay him, because Bean had not pushed him. The second admits that he owes Bean, and requests the latter to let him know the amount. From the last letter we see that the debt referred to is due by a note, and that the defendant evidently regards it as a subsisting obligation, all of which he desires to pay, and none of which does he desire to repudiate. There is not an expression in it from which it can reasonably be inferred that he was not willing to pay the entire debt at once, provided he was able to do so. His request to Bean to let him know the least he would take in satisfaction of the debt merely evinces a desire that he should remit something, so that he would be enabled promptly to satisfy the demand. It does not indicate that he intended to repudiate any part of the claim. He promises to pay in full if Bean will consent for him to sell the land; but Bean's consent was not necessary for this purpose. The condition being nugatory, it would seem that Bean's compliance with it was not essential in order to give validity to the promise.

It is probable that Bean had requested immediate payment, and that this promise was made with a view to meet that demand. It is not in-

consistent with the idea that he was willing to pay at all events when he could. On the contrary, his strong expression, that Bean had been as kind to him as a father, tends to repel the presumption that he did not desire to carry out the contract and to pay the debt.

The tendency of modern decisions has been to construe the statute more liberally in favor of debtors, and not to torture vague expressions into acknowledgments or promises when the language does not clearly import such construction. We think the statute should be construed so as to carry out the intention of the Legislature, and to effect the object which was sought to be accomplished by it. The evil which the statute of limitations in reference to debts was intended to remedy, was to prevent demands originally invalid or which had been discharged from being enforced after such a lapse of time as would probably make it impossible for defendants to procure the evidence by which a just defense could be established. The reason for the statute no longer exists when the defendant within a short time before the bringing of the suit has acknowleged the justness of the demand.

But the rule which permitted a new promise to be proved by parol evidence became subject to abuse, and led, in England, to the passage of a statute which required the acknowledgment or promise to be in writing. Our own statute upon this subject has been held to be substantially the same; though it is to be noted that Lord Tenterden's act uses the words, "no acknowledgment or promise," while the statute of this State omits the word promise altogether. It would seem that the omission might indicate some difference in intention.

It would appear, therefore, that when a defendant clearly acknowledges in writing that the debt is a just and subsisting obligation, and evinces that although he is unable to pay at the time, he has no desire or purpose to repudiate any part of it, every evil which the statute of limitations was intended to remedy is obviated, and that no reason exists why the demand should not be enforced.

We remark further, that in our opinion the second letter revived the debt, if it had not already been renewed by the first; and that at the time the third was written there was an enforceable existing indebtedness. Under such circumstances, the probability that defendant intended to repudiate the debt in any manner or for any amount, is less than it would have been had the claim been then barred. We think this may properly be looked to in construing the latter.

We conclude that the last letter contains a sufficient acknowledgment to remove the bar of the statute, and that there was no error in giving judgment for the debt.

The lien being an incident of the debt, when the debt was revived the lien was also revived. Perkins v. Sterne, 23 Texas, 561.

The defendant neither pleaded nor proved that he was the head of a family or that the land upon which the lien was enforced was his homestead. Therefore there is no question of homestead in the case.

The judgment of the Court of Civil Appeals is reversed and the judgment of the District Court affirmed.

*Judgment of District Court affirmed.*

Delivered April 23, 1894.