For the charge given, the judgment is reversed, and the cause remanded for another trial.

---

## VINSON v. WHITFIELD.

(Court of Civil Appeals of Texas. Jan. 26, 1911.)

1. VENDOR AND PURCHASER (§ 253*) — VENDOR'S LIEN.

The note executed by defendant's husband recited that it was given as the balance of the unpaid purchase money on a certain tract, then deeded to the maker by the payee under a deed of even date, and after her husband's death, and after the note was barred by limitations, defendant made an indorsement on the note acknowledging that it was due and unpaid, and agreeing to pay it on a certain date. The property referred to in the note was community property, and defendant inherited her husband's interest therein at his death. *Held*, that neither the recital in the note, nor defendant's indorsement thereon agreeing to pay it, created any contract lien on the land to secure payment of the note, nor did any lien arise by implication of law in favor of an assignee of the note as against defendant.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 253.*]

2. LIMITATION OF ACTIONS (§ 143*)—ALLOWANCE OF CLAIMS—CLAIMS BARRED BY LIMITATIONS.

An administrator cannot charge the estate by acknowledging a debt of decedent barred by limitations; it being his duty to plead the statute.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 582; Dec. Dig. § 143.*]

3. LIMITATION OF ACTIONS (§ 164*) — ACKNOWLEDGMENT OF LIABILITY—EFFECT.

Acknowledgment of a debt barred by limitations creates a new liability, the original liability merely being a consideration for the new promise, and the same rule applies to a stranger to the original indebtedness, so that the acknowledgment of a note barred by limitations and agreement to pay it by one not originally a party thereto would not revive any implied lien existing as against the maker of the note on land for the purchase price of which it was given.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 619, 648; Dec. Dig. § 164.*]

4. HUSBAND AND WIFE (§ 268*)—WIFE'S LIABILITY—HUSBAND'S DEBTS.

A wife is not personally liable for the community debts contracted by her husband.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 953–967; Dec. Dig. § 268.*]

5. USURY (§ 126*)—PERSONS ENTITLED TO ASSERT—PERSONAL NATURE OF DEFENSE.

Since the plea of usury is personal to the one alleging it, one acknowledging and agreeing to pay a usurious note barred by limitations could only claim the advantage of the usury law from the time she agreed to pay the note; her agreement being a new promise.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 364–416; Dec. Dig. § 126.*]

Error from District Court, Panola County; W. C. Buford, Judge.

Action by M. J. Whitfield against Rhoda Vinson. Judgment for plaintiff, and defendant brings error. Reversed and rendered as stated.

On October 16, 1886, Sam Vinson executed a note for $110, due November 1, 1889, payable to Beauchamp or bearer, bearing 12 per cent. interest from date. Appellee claims to have become the purchaser of this note, for a valuable consideration, before maturity. In October, 1893, Sam Vinson made and signed on the back of this note an acknowledgment of the justness of the debt and provided that it become due December 1, 1893, and on November 7, 1901, he again signed a similar acknowledgment on the note. Sam Vinson died, and appellant on January 1, 1906, promised in writing to pay the debt

that was unpaid. There were payments credited on the original note. Appellee brought suit against appellant on her undertaking for the principal and interest at 12 per cent., and to foreclose a vendor's lien on the land. Appellant answered by denial, plea of usury, and praying that no interest be allowed and for the application of all payments in reduction of the principal. The jury, under peremptory instruction, returned a verdict for appellee.

Brooke & Woolworth, for plaintiff in error. Frank Lawson and Chas. S. Todd, for defendant in error.

LEVY, J. (after stating the facts as above). Appellant for error makes the point that her undertaking sued on was purely an individual liability, and did not operate to create or continue any lien on the land. The judgment foreclosed a vendor's lien on the land. It was conclusively established that the original indebtedness was that of Sam Vinson, and that he died more than a year before January 1, 1906. On the date of January 1st mentioned, the original indebtedness of Vinson was barred by limitation by 1 month and 24 days. It was under such circumstances that appellant, the wife of Vinson, made the indorsement, as a personal undertaking, on the original note: "I acknowledge the within note due and wholly unpaid save and except the credits mentioned, and I agree to pay same on January 1, 1906." It was signed by appellant on January 1, 1906, the day it was made payable. Admitting that appellant's promise to pay the debt created a personal liability against her, was there error in decreeing and foreclosing a vendor's lien? The original note of Sam Vinson recited: "The above note is given as the balance of the unpaid purchase money on a certain tract of land this day deeded to me by J. H. Beauchamp and wife, more fully described in said deed, which bears even date herewith." The deed referred to shows on its face a cash consideration, and does not retain any lien. This recital is relied on by appellee as showing the existence of a lien on the land, and, it is claimed, by appellant's undertaking she acknowledged the existence and validity thereof. Certainly the language does not show an express lien. As said in Claes v. Loan Association, 83 Tex. 50, 18 S. W. 421, "the language in the note 'said amount being the money of Claes and Lehnbenter, used in the purchase and improvement of lots 6 and 7 in block B,' does not evidence the existence of any definite lien." Neither is there found in the language of the appellant's undertaking to pay the note any evidence of the giving or creating any contractual lien. Therefore appellee could not predicate any right upon an express or contractual lien on the land against appellant. Consequently the judgment foreclosing a vendor's lien could only be sustained upon the determination that the undertaking sued on by implication gave the appellee a lien on the land. As neither the terms of the original note nor the appellant's promise to pay same expressed a lien, the law would attach no presumption of a lien from the face of such undertaking. The only assumpsit or promise which the law implies from the bare undertaking of a person to pay the debt of another for which he was in no wise liable is merely for payment of the debt in money. There is no presumption that he intends to secure the debt by a lien on particular property. The lien rests in distinct contract in this character of undertaking. It is true that the recital mentioned may be sufficient in connection with other evidence to show as between Vinson and Beauchamp, who were in the relation of vendor and vendee, that it was the intention of such parties to not waive a lien on the land and to rely on the land as security for the payment of the money. This would create an implied lien as between a vendor and vendee. And it is true that appellee as assignee of the note would acquire the rights of the vendor, Beauchamp, to foreclose as against Vinson the implied lien. But appellee in the facts of this case could not be said to have presented by the appellant's undertaking sued on a state of facts from which a lien would arise by implication of law. Appellee was simply the assignee of the note of Sam Vinson. According to the evidence, Sam Vinson had been dead more than a year, and the note was barred by limitation when appellant promised to pay same. The land, it appears, was community property, and appellant, the wife, inherited her husband's interest. If appellee as the assignee of the note of Sam Vinson acquired an implied lien on the land as against Sam Vinson, it, as the debt, was barred at the time of appellant's undertaking. In such circumstances appellee at the time appellant promised to pay the note stood there without any enforceable lien or debt. And appellant stood there the absolute owner of the land and free of any legal incumbrance as against appellee. She was not buying the land, nor could appellee have sold her the land. If at the time of appellant's undertaking suit had been instituted against the administrator of Vinson's estate, the administrator in the proper discharge of his duty under the law would have been compelled to plead the statute of limitation. This plea would have ended appellee's rights. If there had been an administrator, he could not have charged the estate by the acknowledgment of a debt barred by limitation. Moore v. Hillebrant, 14 Tex. 312, 65 Am. Dec. 118. So, under these facts, it could not be said that appellant was shown to have been paying the debt as a consideration to free her property from any incumbrance, or from which could be inferred a continuation of any implied lien. Nor could it be said that appellee, under the facts of the case, predicated a right on the appellant's

undertaking to pay the debt on the ground that the original debt of Vinson was revived, and the implied lien against Vinson was thereby revived as an incident of the debt. It is a well-settled rule in this state that when a debt becomes barred by the statute of limitation, and there is an acknowledgment or renewal of it by the parties, a new liability is created by express agreement; the original liability serving merely as a consideration therefor. Womack v. Womack, 8 Tex. 397, 58 Am. Dec. 119; Howard v. Windom, 86 Tex. 560, 26 S. W. 483; Association v. Goforth, 94 Tex. 259, 59 S. W. 871. And, if this is the rule as between the original parties, as clearly so would it be with a stranger to the original indebtedness as here. Appellant was an utter stranger to the original debt, and in no wise liable therefor. A wife is not personally liable for the community debt contracted by the husband. As to her undertaking, the original indebtedness would not be serving as the consideration, and but for the fact that the law imports a consideration in her promise to pay there would appear no consideration for the undertaking. It is the established doctrine that the new promise is the foundation of the suit and the cause of action. Coles v. Kelsey, 2 Tex. 542, 47 Am. Dec. 661. If the new promise is the cause of action, as it is, and the law is applied to the promise shown and sued on, it is the personal obligation of appellant, and not the revival of the debt of Vinson. If not a revival of the debt of Vinson, but purely a distinct and new contract of appellant, as it is, an implied lien is not shown to exist. There being no lien shown, it was error to decree a foreclosure of a lien.

The appellant for further error contends that her undertaking sued on was subject to the usury law, and unenforceable against her plea of usury, as to such rate of interest. The act of 1892 denounced as usurious and void as to interest any written contract stipulating for more than 10 per cent. interest per annum. The original note in evidence bore 12 per cent. from date until paid. Appellant's undertaking being a new and distinct liability on her part, it was subject to the usury law in force at the time, and her contention must be sustained. Appellant, however, cannot assert usury back of the time of her undertaking. The plea of usury is personal to the one asserting it; and, her undertaking being in a personal capacity, she could not claim any benefit of that which was done by others. Appellant would be held to have undertaken the payment of the note to the amount due according to its terms at the time she promised to pay same. By the evidence allowing interest and credits to that date it appears there was due $197.38. From and after the date of her promise no interest because of usury is al-

lowable. Applying to the amount owing by her the credit of $12 on October 26, 1900, there remains the sum of $185.38, for which judgment should have been awarded appellee. It was also error to have the judgment bear 12 per cent. The judgment will therefore be reversed and so reformed as to decree a recovery in favor of appellee against appellant for $185.38 with 6 per cent. interest, without the foreclosure of any lien upon the land described in the judgment below, and appellee to pay costs of this appeal.