CANYON LOAN CO. et al. v. GAMBLE.

No. 4711.

Court of Civil Appeals of Texas. Amarillo.

March 8, 1937.

Rehearing Denied May 10, 1937.

H. H. Cooper, of Amarillo, for appellants.

Sanders & Scott, of Amarillo, for appellee.

JACKSON, Justice.

On July 11, 1935, J. B. Gamble, appellee, as administrator of the estate of Tom Davies, deceased, instituted this suit in the district court of Randall county against the Canyon Loan Company to recover the sum of $10,000, with interest, evidenced by note dated January 6, 1929, payable to Tom Davies one year after date, bearing interest at the rate of 7 per cent. per annum, payable semiannually. He also sought to foreclose a deed of trust lien on lot 2 in block No. 42 in the town of Canyon against the Canyon Loan Company and the First National Bank of Canyon.

In addition to the usual allegations to recover on the note and foreclose the lien, the appellee pleaded an express agreement and an implied agreement for the extension of the due date of the indebtedness; a new promise which he asserted defeated the bar of the statute of limitation; set up estoppel against limitation, and in a trial amendment pleaded that on or about September 21, 1934, the Canyon Loan Company acknowledged in writing the justness of the debt.

The First National Bank of Canyon disclaimed.

The Canyon Loan Company answered by numerous exceptions; pleaded general denial, four-year limitation against the note, and two-year limitation against any renewal or any acknowledgment of the justness of the debt, alleging if any such agreement or acknowledgment was made, it was oral and not in writing.

The First National Bank in Canyon, hereinafter called intervener, intervened in the suit alleging that it was a national banking corporation authorized to begin business on April 5, 1934, and said that on the day it opened for business intervener purchased from the First National Bank of Canyon one note dated November 13, 1929, given by the Canyon Loan Company for the sum of $5,000, and payable to the order of the First National Bank of Canyon; that on December 12, 1934, the note was properly renewed, and to secure the payment thereof, the Canyon Loan Company executed and delivered to intervener a deed of trust on certain real estate, including lot No. 2 in block No. 42, in the town of Canyon; that the appellee's deed of trust was never placed of record; intervener had no notice, either actual or constructive, of such lien and is an innocent purchaser with a superior lien which it asks to be foreclosed.

At the close of the testimony, the court peremptorily instructed the jury to return a verdict in favor of appellee. Judgment was rendered that he recover of the Canyon Loan Company the sum of $12,133, the principal, interest, and attorneys' fees on the note; the lien in favor of Tom Davies was adjudged superior to the lien claimed by the intervener, and foreclosed on the property involved; ordered the issuance of an order of sale; directed the lot sold as under execution and intervener take nothing by his suit.

The Canyon Loan Company and the intervener, prosecute separate appeals.

The Canyon Loan Company predicates its appeal on two propositions; first, that the testimony fails to show that W. C. Black had authority to sign the name of the Canyon Loan Company to the checks and make the notations thereon; second, that the testimony does not show an acknowledgment of the debt in writing sufficient to toll the statute of limitation under article 5539 of the Revised Civil Statutes.

The record discloses that some time prior to the transaction here involved, the National Bank Examiner condemned certain real estate and notes held as assets by the First National Bank of Canyon and demanded the removal of such real estate and notes from the assets of said bank. To comply with this ruling, the Canyon Loan Company was incorporated with a capital stock of $50,000, and such condemned assets transferred to said loan company. The directors and officers of the loan company, as indicated by the record, were identical with the officers and directors of the First National Bank. Oscar Hunt, a director, a member of the loan committee, and the vice president of said bank, became the president of the Canyon Loan Company and has since held such position continuously. O. W. H. Cook, also the vice president, a director and stockholder in the bank, was a stockholder in and was elected secretary-treasurer of the Canyon Loan Company. This position he held until some time in 1929 when he was succeeded by W. C. Black, the cashier and a director of said bank.

The First National Bank of Canyon and the First State Bank of Canyon were consolidated and began business on April 5, 1934, under the name of the First National Bank in Canyon, and this new institution

acquired the assets and succeeded to the business and assumed the liabilities to the depositors of the First National Bank of Canyon. The directors and officers of the Canyon Loan Company, after such consolidation, and the directors and officers of intervener were identical, except two who came to intervener from the First State Bank of Canyon.

On February 6, 1929, the directors of the Canyon Loan Company, by resolution, authorized Oscar Hunt, its president, to borrow from Tom Davies for one year the sum of $10,000, bearing interest at the rate of 7 per cent. per annum, payable semiannually, and to pledge as collateral for such loan such assets of the Canyon Loan Company as were required.

In compliance with this authority and said resolution, the Canyon Loan Company by its president executed to Tom Davies a note of even date with the resolution for the sum of $10,000, payable in one year, at the office of the First National Bank of Canyon; contemporaneously with the note the president also signed and delivered to Mr. Davies a deed of trust on lot 2, in block 42, in the town of Canyon to secure the payment of the note.

On November 20, 1934, Tom Davies was adjudged insane and on February 2, 1935, died, and J. B. Gamble was legally appointed and duly qualified as the administrator of the estate of said deceased.

The Canyon Loan Company maintained its place of business in the First National Bank of Canyon until the consolidation with the First State Bank, and thereafter maintained its place of business in the First National Bank in Canyon.

Mr. Hunt testified that the note and deed of trust were executed and delivered to Tom Davies and placed in his lock box in the First National Bank of Canyon; that "the interest was kept paid up on this $10,000.00 note as it fell due, each six months, until 1934 * * * Semi-annually * * * from the time it was made in 1929 until the middle of 1934. * * * Every time Tom Davies would come in there he would say, 'I want that interest', and I would tell the boys up there to pay him. These semi-annual payments were made by my authority and at my direction. * * *

"My testimony is that the interest was paid in that way until the note fell due; and when the note fell due, that the principal was not paid but the interest was paid and the principal carried for six months,

and the interest was paid again, and then the interest was paid for six months again and the interest paid again, and so on, up to August, 1934. * * * This last check was dated September 21, 1934."

Mr. W. C. Black testified that he had no stock in the Canyon Loan Company, but became secretary-treasurer thereof in 1929, succeeding O. W. H. Cook; that he gave the checks for the payment of the semiannual interest on the $10,000 note to Mr. Davies, who indorsed and deposited them in the First National Bank, and each of them were paid; that "I was told by the Canyon Loan Company officers and by Mr. Hunt particularly that I should pay this interest. * * * Mr. Hunt would tell me in substance to pay Tom Davies the interest on his $10,000.00 note. * * * All of these checks, except the one dated August 7th, are in my handwriting. * * * The notations 'Int.,' 'Int. on Note', and 'Int. on Loan' meant interest on the $10,000.00 note."

The first interest check, excepting some immaterial numbers and letters, is for the amount of the semiannual interest, and is as follows:

"The First National Bank, Canyon, Texas, 8/7 1929 Pay to the Order of Tom Davies Three Hundred Fifty and No/100 Dollars ($350.00)

"Canyon Loan Company
"Oscar Hunt."

Each of the other interest checks is drawn on the same bank, for the same amount, and dated on or near the next succeeding semiannual interest payment date, and signed, "Canyon Loan Company, W. C. Black." The check dated February 8, 1930, has noted in the left-hand corner, "Int." The check dated June 15, 1933, has noted in the left-hand corner, "Int. on Loan," and the last check given is as follows:

"Canyon, Texas, September 21, 1934 Pay to the order of Tom Davies ...... $350.00 Three Hundred Fifty and No/100 ...... Dollars

Canyon Loan Company
Int. on Note          By W. C. Black."

Mr. Black testified the notations "Int.," "Int. on Loan," and "Int. on Note" were in his handwriting and meant interest on the $10,000 note which had been given by the Canyon Loan Company to Tom Davies. So far as this record reveals, during the years no one questioned the authority of Mr. Black to issue the checks of the Canyon Loan Company, make the notations appearing thereon, and pay the interest on said

note. Such authority is not challenged in the pleading, Miles Realty Co. v. Dodson (Tex.Civ.App.) 8 S.W.(2d) 516, 521, but had it been, the testimony is uncontroverted that he acted by and with the authority of the Canyon Loan Company.

Article 5539, R.C.S., is as follows: "When an action may appear to be barred by a law of limitation, no acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the case out of the operation of the law, unless such acknowledgment be in writing and signed by the party to be charged thereby."

"The phrase, acknowledgment of the justice of the claim, as used in the statute, imports an admission at the time, that the claim is a subsisting debt; and, if unaccompanied by any circumstances repelling the presumption of the party's willingness or intention to pay, his liability and consequent promise are necessary legal inferences from the facts of the case." Webber v. Cochrane, 4 Tex. 31, at page 37.

In Stein v. Hamman et al., 118 Tex. 16, 6 S.W.(2d) 352, 353, 9 S.W.(2d) 1104, in answer to a certified question, the Supreme Court says: "It is well settled that a statement in writing, signed by the party sought to be charged, which clearly acknowledges the existence of a debt against him, carries with it an implied promise to pay the same. * * * It must be conceded that mere payment or pledge, as such, will not arrest the statute, but, if there be a writing duly signed accompanying the payment or pledge which meets the requirement of the statute as to renewal, a different question arises. A payment accompanied by the written acknowledgment and promise to pay required by law will defeat the plea against the original promise, and likewise a sufficient writing accompanying a pledge will have the same effect."

In Elsby v. Luna et ux. (Tex.Com.App.) 15 S.W.(2d) 604, 605, the court holds: " 'This new promise need not be expressed in the writing, but may be implied from what is written.' 'An unqualified and unequivocal acknowledgment in writing on the part of the debtor, of the existence of the indebtedness, unaccompanied by expressions indicating an unwillingness to pay same, will raise the implication of a new promise to pay the indebtedness.' York v. Hughes (Tex.Com.App.) 286 S.W. 165; Coles v. Kelsey, 2 Tex. 541, 47 Am.Dec. 661; Howard v. Windom, 86 Tex. 560, 26 S.W. [483]

485; Stein v. Hamman [118 Tex. 16] 6 S. W.(2d) 352 [9 S.W.(2d) 1104] (Certified Question Opinion Adopted)."

█ It is apparently settled that if the debtor clearly acknowledges in writing the existence of a debt against him and indicates no unwillingness to pay, such acknowledgment raises an implied promise to pay such debt.

█ The loan company by its check ordered the bank to pay Tom Davies $350 "Int. on Note," admittedly the amount of the semiannual interest on the $10,000 note due Tom Davies. Obviously, the writing acknowledged the existence of the debt for the interest, but under this record, there could be no debt for interest unless a debt for the principal existed; hence, we conclude that the writing was sufficient to take the case out of the operation of the law of limitation.

"Section 4078, Rev.St.Idaho, is as follows: 'No acknowledgment or promise is sufficient evidence of a new or continuing contract, by which to take the case out of the operation of this title, unless the same is contained in some writing signed by the party to be charged thereby.' In Barron v. Kennedy, 17 Cal. [574] 577, the court say: 'Part payment has always been held sufficient to take the debt on which it is made out of the statute. Unless accompanied at the time with qualifying declarations or acts on the party making the payment, it is deemed an unequivocal admission of a subsisting contract or liability, from which a jury is justified and bound to infer a new promise. The authorities are uniform to this point, and it matters not whether the payment be either upon the principal or interest of the debt,' providing, always, that the promise is made in writing, signed by the party to be charged thereby. 2 Pars. Cont. 353; Sigourney v. Drury, 14 Pick. [(Mass.) 387] 391; Whipple v. Stevens, 2 Fost. [22 N.H. 219] 227; Parsonage Fund v. Osgood, 21 Me. [176] 179; Sanford v. Hayes, 19 Conn. [591] 597; Bradfield v. Tupper, 7 Eng.Law & Eq. 541. 'And there is nothing in section 4078 of our statute which alters this well-settled rule. This section does not purport to make any change in the effect of acknowledgments or promises, but simply to alter the mode of their proof, and is directed—principally, at least —against the admission of oral acknowledgments and promises.' " Kelly et al. v. Leachman, 3 Idaho (Hasb.) 629, 33 P. 44, 45.

Heard v. Heard (La.App.) 149 So. 156; Bowe v. Ledworowsky et al., 215 Wis. 1, 253 N.W. 791; Kienke v. Hudson, 126 Neb. 551, 253 N.W. 687; Howard v. Windom et al., 86 Tex. 560, 26 S.W. 483; Orange Inv. Co., Inc., v. Coyle et al. (Tex.Civ.App.) 95 S.W.(2d) 1372; Martin v. Somervell County, 21 Tex.Civ.App. 308, 52 S.W. 556; 37 C.J. p. 1149, par. 627.

Intervener assails as error the action of the court in holding there was no fact issue to be submitted to the jury, and decreeing that appellee had the superior lien because the uncontroverted testimony shows the deed of trust lien held by the deceased was never recorded, and that intervener had neither actual nor constructive notice of the existence of such lien, and hence was an innocent purchaser.

■ If we are correct in holding that the Canyon Loan Company had acknowledged by sufficient writing the justness of the debt to defeat the plea of limitation, then as between said company and appellee the lien was extended, since the lien is but an incident of the debt. Johnson v. Steele (Tex.Civ.App.) 87 S.W.(2d) 785; Vackar v. Supreme Lodge, etc. (Tex.Civ.App.) 52 S.W.(2d) 655.

■ In addition to the testimony heretofore recited showing the connection and interrelation of these three corporations, their common interest, their occupancy of the same place of business, and the almost complete identity of the officials of such respective corporations, the record is that the Canyon Loan Company had very little business from the start, had had no meeting of its board of directors for four or five years, and had no business in that time; that the First National Bank of Canyon still exists and has officers and directors, but is not doing an active banking business; that the property on which the lien was foreclosed is a part of the real estate received by the Canyon Loan Company as discarded assets of the First National Bank of Canyon. Mr. J. W. Reid, as director of the Canyon Loan Company, approved the resolution authorizing Mr. Hunt to negotiate with Mr. Davies for the $10,000 loan. Mr. Hunt on November 13, 1929, executed the $5,000 note to the First National Bank of Canyon, and said note, unsecured, was acquired by intervener, the First National Bank in Canyon, when it was organized.

Mr. Hunt signed the renewal note and executed the deed of trust asserted by the intervener when Mr. Reid was still president of the new bank. Mr. Black, as secretary-treasurer of the loan company and cashier of the new bank, attested the renewal note and the deed of trust given to secure it.

Mr. Hunt was on the loan committee of the bank and was consulted by the directors relative to loans. He testified: "I, as president of the Canyon Loan Company, also executed the $5,000.00 note in favor of the First National Bank in Canyon, and at the time I executed that $5,000.00 note and that $5,000.00 deed of trust securing the note, I knew that this Tom Davies note for $10,000.00 and deed of trust was outstanding and had not been paid."

In Vogel et ux. v. Zipp et al. (Tex.Civ. App.) 90 S.W.(2d) 668, 671, it is said: "The law is also settled that a bank succeeding to the rights of another bank by consolidation and merger is not entitled to the protection of an innocent purchaser for value in due course without notice."

The facts and circumstances stated from the record are not controverted.

In the law of Banks & Banking, by Zollmann, Vol. 4, p. 352, par. 2322, the law is stated as follows:

"In the absence of evidence, it is assumed that an officer or agent of the bank communicates his knowledge of facts material to a particular transaction to the bank, regardless of the place where such information is received, and that he does not represent his own interest.

"The burden, therefore, is on the bank to show that none of its officers had notice of the situation.

"In the absence of evidence on the matter, knowledge by a branch manager, an agent put in charge by the bank commissioner, the discount committee, the secretary, a vice president, the president, is notice to the bank. Similarly in the absence of evidence on the matter knowledge by the cashier is notice to the bank."

This court held in Pacific American Gasoline Company of Texas v. Miller, 76 S.W. (2d) 833, 851:

"The legal fiction of the separate entities of two corporations, the stock of which is owned by the same parties, should be disregarded when necessary for the prevention of fraud or to protect the legal rights of third parties. Upon ascertainment of all the facts, it is the prerogative of the court and not the jury to look through the forms to the substance of the relations existing

between the corporations. Williams v. Freeport Sulphur Company (Tex.Civ.App.) 40 S.W.(2d) 817; Oriental Investment Co. v. Barclay, 25 Tex.Civ.App. 543, 64 S.W. 80; Buie v. Chicago, etc., Ry. Co., 95 Tex. 51, 65 S.W. 27, 55 L.R.A. 861; Fowler v. Small (Tex.Civ.App.) 244 S.W. 1096, 1097; O'Neal v. Jones (Tex.Civ.App.) 34 S.W. (2d) 689; 14 C.J. 61, § 22; Id. 62, § 25; 10 Tex.Jur. 648, § 49.

"Upon ascertainment of the facts, the courts will disregard the fiction of corporate entity where the fiction (1) is used as a means of perpetrating fraud; (2) where a corporation is organized and operated as a mere tool or business conduit of another corporation; (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation; (4) where the corporate fiction is employed to achieve or perpetrate monopoly; (5) where the corporate fiction is used to circumvent a statute; and (6) where the corporate fiction is relied upon as a protection of crime or to justify wrong." Pacific American Gasoline Company of Texas v. Miller (Tex.Civ.App.) 76 S.W.(2d) 833, 851 (Writ ref.).

It is our opinion that neither of appellants has presented reversible error, and the judgment is affirmed.