## YORK v. HUGHES.   (No. 3107.)*

(Court of Civil Appeals of Texas. Texarkana. June 25, 1925. Rehearing Denied July 2, 1925.)

**I. Limitation of actions ⬞149(1)—How bar may be removed stated.**

To remove bar of statute of limitation (Rev. St. art. 5705), there must be unqualified acknowledgment of debt from which promise to pay is implied, compliance with, or happening of event on which depends conditional promise to pay, or acknowledgment or promise to pay, on condition which is nugatory and compliance with which is not essential to action by debtor in performance thereof.

**2. Limitation of actions ⬞148(4), 149(1)— Acknowledgment must show debt is due; positive unqualified acknowledgment of subsisting debt necessary to remove bar; "acknowledgment of justness of claim."**

Acknowledgment of debt must show positively that it is due, wholly or in part, and be unqualified to remove bar of statute (Rev. St. art. 5705); "acknowledgment of the justness of the claim" importing admission that it is subsisting debt, and necessitating inference of liability and consequent promise to pay, if unaccompanied by circumstances repelling presumption of willingness or intent to pay.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Acknowledge—Acknowledgment.]

**3. Limitation of actions ⬞146(3)—Statements in letter, relied on as acknowledgment of debt, must be considered as whole.**

Statements in letter, relied on as acknowledgment of debt, removing bar of statute (Rev. St. art. 5705), must be considered as whole to gather real and full intent of writer.

**4. Limitation of actions ⬞149(4)—Letter held unqualified acknowledgment and promise to pay debt.**

Letter to creditor *held* unqualified acknowledgment of and promise to pay debt, interrupting statute (Rev. St. art. 5705); request

for compromise of cross-action by debtor's wife in land suit against writer, creditor, and cross-complainant, being entirely independent and separable from promise to pay debt, and not intended to make literal performance of compromise agreement condition precedent to payment.

**5. Limitation of actions ⬞149(4)—Request in letter promising to pay debt, that all parties to pending suit compromise cross-action therein, held not condition precedent to payment.**

Debtor's request in letter to creditor, that all parties to pending suit against them and others agree to compromise cross-action by codefendant, will not be construed as condition precedent to payment of debt as promised therein, so as to prevent removal of bar of statute (Rev. St. art. 5705), as debtor could not demand enforcible agreement by creditor binding all parties.

**6. Limitation of actions ⬞145(5)—Debtor's proposition, performance of which by creditor is optional, no consideration for promise to pay debt.**

To constitute valid conditional agreement to pay debt, removing bar of statute (Rev. St. art. 5705), there must be mutual obligations on both creditor and debtor at same time, and simple proposition by debtor, performance of which by creditor is optional, is no consideration for promise.

Appeal from District Court, Hunt County; Newman Phillips, Judge.

Action by Lula J. Hughes against J. W. York. Judgment for plaintiff, and defendant appeals. Affirmed.

The suit was by appellee to recover of appellant $1,400, as a debt incurred in the nature of a loan, with interest at 8 per cent. per annum, and the further sum of $75 as the difference due on a horse trade. It was alleged that the loan was payable on demand, and that after default in payment, on May 7, 1923, the defendant, in reply to a request for renewal of the debt, by note, had written the plaintiff a letter in which he had acknowledged the justness of the debt, promising to pay the same, but he has failed and refused to pay same or any part thereof, though often asked to do so. The suit was filed November 23, 1923. The defendant answered by general denial, and specially pleaded the statute of two-years' limitation in bar of recovery. The case was tried before the court, resulting in a judgment for the plaintiff for the $1,400 and interest, but denying a recovery for the $75. The sole controversy is as to whether the claims sued on are barred by the statute of limitation of two years.

It is shown by the evidence that appellee loaned the appellant $1,400 on December 26, 1919, and which he agreed to repay with 8 per cent. interest. The agreement was a

⬞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted November 25, 1925.

verbal one. She gave a check on the Guaranty State Bank of Lone Oak for the money, payable to the order of appellee, and he cashed it. It does not appear from the .evidence that a date' was agreed upon for payment of the loan. No mention was made of any date for payment, and no special due date or time of payment was in contemplation of the parties. It was therefore not a time demand, and limitation would run from the date of the receipt of the money loaned. The appellant made no payment on the loan. On April 17, 1923, the appellee wrote him the following letter:

"Dear Sir: Well, Will, I thought I would rite you in regard to the $1,400, and the $75. You can take out for the cotton seed I bought from you, and the 3 cow troughs, and what work you done, out of the $75, and make me a note for the balance."

The appellant replied by letter dated May 7, 1923, reading, as pertinent to state, as follows:

"Dear Sister: Will answer your letter which came to hand the other day. In regard to the note you wanted of me on what I owe you, what is wrong? Why did' you want a note? You said you would let me know when you needed the money. * * * I wanted to give you a note at the start, and you would not take it. So now, as you have not done anything that you promised, I am going to ask you all to make a settlement with May, and then I will do or make some way or effort to pay you. You all seem to think May has no interest there. I wrote Bob what we would do, and you answered the letter. So the only way to do this is to let the court settle it, and give it to a lawyer. I had rather settle it without it. So if you all want to settle peaceably write us or come and we will fix it up, or meet you anywhere."

As explanatory of the statements in the letter, it was proven that, prior to the date the above letters were written, a suit' was filed and was pending in the district court of Rains county, wherein Fraley (initials not given) was plaintiff, and appellee, her brother, J. H. Hughes, and May York and her husband (the appellant) were defendants. The nature of the suit is not specially shown beyond the mere fact that it was a "land suit." As far as shown, Mrs. Fraley died leaving some estate in a tract of land. Whether the land was Mrs. Fraley's separate property 'or community property does not appear. Mr. Fraley, the plaintiff in the suit, was her surviving husband. Her first husband named Hughes, was the father of appellee and her brother. May York was the daughter by the second marriage with Fraley. In that suit May York, joined by her husband, subsequently filed a cross-action, affirmatively claiming a certain interest or right in the land. The record does not show what special interest she was claiming, or the nature of her claim. Neither does the record show that any pleading was filed by appellee or any other person contesting the cross-action. The suit had not been tried or otherwise disposed of at the date of the present judgment. As further explaining the letter, the appellee testified to the extent following:

"In the letter that Will York wrote, where he refers to the 'settlement with May,' and said that whenever we settled with May he would try to do something, I believed—I understood that he referred to the land suit. That was the only thing to have a settlement with her about, and I did not settle with her because— I don't know whether she is claiming an interest in her mother's land, whatever land her mother owned at the time of her death, or that which includes also an interest in her half-sister's land. I hardly know about that."

The appellant or his wife did not testify in the trial.

The trial court concluded and founded his judgment on the following:

"The defendant in writing admitted the justness of the debt, and the law implies his promise to pay it, and he is liable therefor to the plaintiff; that the condition referred to in the letter is not such a condition as defendant would have a right to have fulfilled by the plaintiff toward the person named in the letter before being compelled to pay the money owing to the plaintiff. Judgment is therefore directed for the plaintiff for the $1,400, with interest provided by law on said sum. The demand for the $75 is barred by the statute of limitation."

It is not claimed on appeal that the $75 is within the terms of the letter.

McMahon & Dohoney, of Greenville, for appellant.

Clark & Clark, of Greenville, and C. A. Sweeton, of Houston, for appellee.

LEVY, J. (after stating the facts as above). [1] The question presented is, in effect, that of whether or not the trial court correctly concluded that the letter of appellant was such "acknowledgment of the justness of the claim" as is contemplated by the statute of limitation. Article 5705, Revised Statutes, expressly provides that in order to take the case out of the operation of the law of limitation, the evidence must show an "acknowledgment of the justness of the claim" made "in writing and signed by the party to be charged thereby." Under this article, as construed by the courts of this state, a particular case may be removed from the bar of limitation by and for such purpose there must be, either: (1) An unqualified acknowledgment of the debt, from which a promise to pay is to be implied. Webber v. Cochrane, 4 Tex. 31; Gathright v. Wheat, 70 Tex. 740, 9 S. W. 76; Krueger v. Krueger, 76 Tex. 178, 12 S. W. 1008, 7 L. R. A. 72; and other cases. (2) A conditional promise to pay the debt, where the condition be com-

plied with or the event happens upon which the promise depends. Mitchell v. Clay, 8 Tex. 443; Salinas v. Wright, 11 Tex. 572; McDonald v. Grey, 29 Tex. 80; Rowlett v. Lane, 43 Tex. 274; and other cases. (3) An acknowledgment or promise to pay the debt, which is effectual and will interrupt the statute although a condition be imposed by the debtor, in case the condition is nugatory, and compliance therewith is not essential to action by the debtor in the performance thereof. Howard v. Windom, 86 Tex. 560, 26 S. W. 483.

[2] The sufficiency of the acknowledgement or promise is made clear in the following quotation from Smith v. Fly, 24 Tex. 345, 76 Am. Dec. 109:

"The rule laid down by the Supreme Court of the United States, in the case of Bell v. Morrison, 1 Pet. 351, and which has been adopted by this court, is, that the acknowledgment must show positively, that the debt is due, either wholly or in part, and must be unqualified. Judge Story there held, that if there be accompanying circumstances which. repel the presumption of a promise or intention to pay, or if the expressions be equivocal, vague, and indeterminate, leading to no certain conclusion, but at best to probable inferences only, it would not amount to an acknowledgment sufficient to take the case out of the operation of the statute."

Further, quoting from Webber v. Cochrane, supra, and which is consistently followed:

"The phrase, 'acknowledgment of the justness of the claim,' as used in the statute, imports an admission at the time, that the claim is a subsisting debt; and, if unaccompanied by any circumstances repelling the presumption of the party's willingness or intention to pay, his liability and consequent promise are necessary legal inferences from the facts of the case."

[3, 4] Therefore, in the light of these rules, and in order to make application of the same to the letter in this particular case, the statements therein must be, as is required, considered and regarded as a whole, to gather the real and full intention of the writer thereof. Beginning, the letter expresses surprise at the request made for the execution of a note "on (for) what I owe you." And continuing, the accompanying statements affirmatively express rather than negative the intention and willingness to pay or make an effort to pay the debt "I owe you," although and notwithstanding the appellee had "not done anything you promised" to do previous to the date of the letter. The statement, intended as a reply to the appellee's request made in her letter, says:

"So now [that], as [though] you have not done anything that you promised, I am going to ask you all to make a settlement with May, and then I will do or make some way or effort to pay you."

He then couples the request for "you all to make a settlement with May" with the simple proposition, "If you all want to settle peaceably," which "I had rather" do, "write us or come and we will fix it up, or meet you anywhere;" otherwise "the only way to do this is to let the court settle it and give it to a lawyer." The words, "make a settlement with May," as used, as appears from the evidence as well as the face of the letter, evidently have reference to the cross-action of May in the land suit. As shown by the evidence, "the land suit was the only thing to have a settlement with her about," and the statements imply that "May" was claiming in her cross-action some special interest in the land about which the suit was pending, and that the appellee and the other parties to the suit were claiming that "May has no interest there." The natural meaning of the statement is that appellant was desirous of bringing about a compromise settlement of the cross-action independently of court action thereon. Therefore the statements in the letter appear to express the two ideas in appellant's mind and purpose, which were (1) to effect a compromise agreement by all the parties to the lawsuit of the cross-action therein; and (2) to make payment of the money borrowed by him from appellee. There is no room for doubt as to whether or not the statement evidences or is tantamount to a promise to pay the debt and prolong the time of payment, for it uses the words, "I will do or make some way or effort to pay you." And in the light of appellee's letter, to which this letter was an answer, the words "on (for) what I owe you" point to and sufficiently identify the loan of $1,400, implying that it is an unpaid indebtedness, and showing no disposition to question it in whole or in part. It is tantamount to a positive and unqualified admission that the debt is owing in whole. But the promise to pay, as it is made, had relation to a certain named contingency or request which must be taken into consideration in determining whether that promise was qualified or conditional, operating to bring it within subdivision 2 above stated. The request for a compromise agreement of the cross-action was entirely independent and separable from the promise to pay the money owing appellee, and the words used do not necessarily require the construction that the intention of appellant was to make the literal performance by the appellee of a compromise agreement a condition precedent to payment at all by him of the loan. The words are not so precise, express, and strong as to express only such intention. The words used, "I am asking you all to make a settlement with May," are rather in the form of a formal request, implying neither what was asked must be rendered, nor, on the other hand, that it would be a favor. It was a mere

proposition on the part of appellant, optional as to compliance or not.

[5] Neither was time an essential of performance by appellant. And the request was not addressed to appellee alone, but to "you all," meaning appellee and the other parties to the suit, in joint agreement. Anything less than a joint agreement of all the parties would not meet the terms or intention of appellant. Her single, separate agreement would be of no benefit or advantage to appellant, as he evidently considered in the words used. The appellee had no authority to make and the appellant was not authorized to demand of her, an enforceable agreement binding all the parties to compromise the suit. Each party to the suit had as much right as the other to say and determine when or whether the controversy over the land should be settled without suit. As a mere matter of inducement for appellee to act in respect to the thing, it would not be construed or given legal effect as a condition so as to defeat legal liability on a debt not vital to liability in the first instance.

[6] As the agreement to compromise the cross-action was not made a condition precedent to the payment of the debt, nor intended to be the consideration for the promise to pay the debt, no legal reason exists for not upholding and enforcing the promise to pay the debt on appellant's part. A simple proposition, optional of performance by appellee, amounts to nothing, within the scope of the law, as the consideration for the promise of appellant to pay the debt. To constitute a valid agreement, as a promise for the promise of the other, there must be mutual obligations upon both at the same time. In this case the statements express an agreement, within the terms of the law only upon one side, and therefore subdivision 2 is not applicable.

The facts bring the case within both subdivisions 1 and 3. Therefore the judgment should be affirmed, and it is accordingly so ordered.