**YORK v. HUGHES. (No. 817–4484.)**

(Commission of Appeals of Texas, Section A. June 23, 1926.)

**1. Limitation of actions ⚖➾146(1).**

To remove bar of limitation from barred indebtedness there must be new promise to pay, evidenced by writing on part of debtor.

**2. Limitation of actions ⚖➾151(2).**

Liability of debtor, who makes new promise to pay barred indebtedness, depends on such new promise.

**3. Limitation of actions ⚖➾148(2).**

Unqualified and unequivocal written acknowledgment of barred indebtedness by debtor raises implication of new promise to pay it, in absence of expressions indicating unwillingness to pay.

**4. Limitation of actions ⚖➾149(6).**

Where debtor's written acknowledgment of existence of barred indebtedness is qualified by express promise to pay it conditionally, fulfillment of such condition is prerequisite to liability on new promise.

**5. Limitation of actions** &bull;⇒149(6)—**Written acknowledgment of debt barred by limitation, qualified by promise to pay when certain settlement was made, held not to remove bar where condition was never fulfilled.**

Written acknowledgment of debt which was barred by limitation, qualified by promise to "do or make some effort to pay you" when amicable "settlement with May" is made concerning certain land, and proposing a conference with view of making settlement, *held* not to remove bar of limitation, where proposal was not acted on and condition never fulfilled.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by Lula J. Hughes against J. W. York. Judgment for plaintiff was affirmed by the Court of Civil Appeals (275 S. W. 229), and defendant brings error. Reversed and rendered.

McMahan & Dohoney, of Greenville, for plaintiff in error.

Clark & Clark, of Greenville, for defendant in error.

HARVEY, P. J. This case is before us on writ of error to the Court of Civil Appeals, sued out by J. W. York, the plaintiff in error herein, who was the appellant in the Court of Civil Appeals. That court affirmed the judgment rendered by the trial court in favor of the defendant in error, Lula J. Hughes. 275 S. W. 229. We adopt the statement of the case as made by the Court of Civil Appeals in the opinion of said court, which is as follows:

"The suit was by appellee to recover of appellant $1,400, as a debt incurred in the nature of a loan, with interest at 8 per cent. per annum, and the further sum of $75 as the difference due on a horse trade. It was alleged that the loan was payable on demand, and that after default in payment, on May 7, 1923, the defendant, in reply to a request for renewal of the debt by note, had written the plaintiff a letter in which he had acknowledged the justness of the debt, promising to pay the same, but he has failed and refused to pay same or any part thereof, though often asked to do so. The suit was filed November 23, 1923. The defendant answered by general denial, and specially pleaded the statute of two-years' limitation in bar of recovery. The case was tried before the court, resulting in a judgment for the plaintiff for the $1,400 and interest, but denying a recovery for the $75. The sole controversy is as to whether the claims sued on are barred by the statute of limitation of two years.

"It is shown by the evidence that appellee loaned the appellant $1,400 on December 26, 1919, and which he agreed to repay with 8 per cent. interest. The agreement was a verbal one. She gave a check on the Guaranty State Bank of Lone Oak for the money, payable to the order of appellee, and he cashed it. It does not appear from the evidence that a date was agreed upon for payment of the loan. No mention was made of any date for payment, and no special due date or time of payment was in contemplation of the parties. It was therefore not a time demand, and limitation would run from the date of the receipt of the money loaned. The appellant made no payments on the loan. On April 17, 1923, the appellee wrote him the following letter:

" 'Dear Sir: Well, Will, I thought I would rite you in regard to the $1400, and the $75. You can take out for the cotton seed I bought from you, and the 3 cow troughs, and what work you done out of the $75, and make me a note for the balance.'

"The appellant replied by letter dated May 7, 1923, reading, as pertinent to state, as follows:

" 'Dear Sister: Will answer your letter which came to hand the other day. In regard to the note you wanted of me on what I owe you, what is wrong? Why did you want a note? You said you would let me know when you needed the money. * * * I wanted to give you a note at the start, and you would not take it. So now, as you have not done anything that you promised, I am going to ask you all to make a settlement with May, and then I will do or make some way or effort to pay you. You all seem to think May has no interest there. I wrote Bob what we would do, and you answered the letter. So the only way to do this is to let the court settle it, and give it to a lawyer. I had rather settle it without it. So if you all want to settle peaceably write us or come and we will fix it up, or meet you anywhere.'

"As explanatory of the statements in the letter it was proven that, prior to the date the above letters were written, a suit was filed and was pending in the district court of Rains county, wherein Fraley (initials not given) was plaintiff, and appellee, her brother, J. H. Hughes, and May York and her husband (the appellant) were defendants. The nature of the suit is not specially shown beyond the mere fact that it was a 'land suit.' As far as shown, Mrs. Fraley died leaving some estate in a tract of land. Whether the land was Mrs. Fraley's separate property or community property does not appear. Mr. Fraley, the plaintiff in the suit, was her surviving husband. Her first husband, named Hughes, was the father of appellee and her brother. May York was the daughter by the second marriage with Fraley. In that suit May York, joined by her husband, subsequently filed a cross-action, affirmatively claiming a certain interest or right in the land. The record does not show what special interest she was claiming, or the nature of her claim. Neither does the record show that any pleading was filed by appellee or any other person contesting the cross-action. The suit had not been tried or otherwise disposed of at the date of the present judgment. As further explaining the letter, the appellee testified to the extent following:

" 'In the letter that Will York wrote, where he refers to the "settlement with May," and said that whenever we settled with May he would try to do something, I believed—I understood that he referred to the land suit. That was the only thing to have a settlement with her about, and I did not settle with her because —I don't know whether she is claiming an in-

terest in her mother's land, whatever land her mother owned at the time of her death, or that which includes also an interest in her half-sister's land. I hardly know about that.'

"The appellant or his' wife did not testify in the trial.

"The trial court concluded and founded his judgment on the following:

" 'The defendant in writing admitted the justness of the debt, and the law implies his promise to pay it, and he is liable therefor to the plaintiff; that the condition referred to in the letter is not such a condition as defendant would have a right to have fulfilled by the plaintiff toward the person named in the letter before being compelled to pay the money owing to the plaintiff. Judgment is therefore directed for the plaintiff for the $1400, with interest provided by law on said sum. The demand for the $75 is barred by the statute of limitation.'

"It is not claimed on appeal that the $75 is within the terms of the letter."

[1-4] In order to remove the bar of limitation from a barred indebtedness, there must be a new promise to pay same, evidenced by writing on the part of the debtor. The liability of the debtor, in such a case, depends, not upon the old obligation, but upon the new promise. This new promise need not be expressed in the writing, but may be implied from what is written. An unqualified and unequivocal acknowledgment in writing on the part of the debtor, of the existence of the indebtedness, unaccompanied by expressions indicating an unwillingness to pay same, will raise the implication of a new promise to pay the indebtedness. But if the acknowledgment of the existence of the indebtedness be qualified by an expressed promise to pay same conditionally, a promise different from the one so expressed will not be implied. In such a case the fulfillment of the named condition becomes a prerequisite to the debtor's liability on the new promise. Salinas v. Wright, 11 Tex. 572; McDonald v. Grey, 29 Tex. 80; Webber v. Cochrane, 4 Tex. 31; Smith v. Fly, 24 Tex. 354, 76 Am. Dec. 109; Mitchell v. Clay, 8 Tex. 443; Coles v. Kelsey, 2 Tex. 556, 47 Am. Dec. 661; Rowlett v. Lane, 43 Tex. 274; Howard v. Windom, 86 Tex. 560, 26 S. W. 483.

[5] In making application of the foregoing principles of law to the letter of York which is relied upon as constituting a new promise, and incidentally removing the bar of limitation from the original indebtedness, no serious difficulty is encountered. A fair interpretation of the language of the letter, in the light of the explanatory proof, shows that the language relied upon as implying a new promise (the alleged acknowledgment of the existence of the indebtedness) is qualified by an expressed promise to "do or make some effort to pay you," when an amicable "settlement with May" concerning her claim to an interest in the land involved in the land suit is made. The letter shows a proposal for a conference, with the view of making such settlement. The proposal was not acted upon, and such settlement was never made. The condition upon which the new promise was predicated was never fulfilled. The fact that fulfillment of the condition depended in part upon the consent of third parties to the proposed "settlement" does not affect the question. The debtor had the right to impose such a condition as a prerequisite to liability upon his alleged new promise.

We recommend that the judgment of the trial court and that of the Court of Civil Appeals be reversed, and that judgment be here rendered for the plaintiff in error.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reversed, and judgment rendered for plaintiff in error.