### SMALLWOOD v. MELTON et al.

No. 13413.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 2, 1936.

Rehearing Denied Nov. 6, 1936.

Arthur Haddaway, of Fort Worth, for appellant.

Patterson & Patterson, of Fort Worth, for appellees.

SPEER, Justice.

This suit was instituted by plaintiff, Marie V. Smallwood, in the Forty-Eighth district court of Tarrant county, Tex., against W. G. Melton for debt and against the said W. G. Melton along with other defendants, to wit, Wm. F. Melton, Mabel E. Melton, Mary Melton Hogue, and her husband Luther M. Hogue, and Bettie Joe Melton, as the only heirs at law of Mrs. Bettie Melton, deceased, for a foreclosure of a vendor's lien securing the debt sued on.

This case is submitted to us upon an agreed statement of the nature of the pleadings and facts proved upon the trial before the court without the aid of a jury.

This agreed statement shows plaintiff sued for a balance of $1,633.73 principal, with interest thereon at 8 per cent. per annum since June 3, 1933. That the original indebtedness was for $5,500 evidenced by one note for that amount due in monthly installments of $50 each with accrued interest; that payments had been made up to June 3, 1933, leaving the amount unpaid in the sum sued for; that the debt was originally secured by a vendor's lien on lots Nos. 17 and 18 in block No. 19 Fairmount addition to the city of Fort Worth, Tex. That the last installment payment on the note matured July 1, 1929. That the property upon which the vendor's lien was claimed was admittedly community property of W. G. Melton and his wife, Mrs. Bettie Melton, and that, subsequent to the execution of the lien, Mrs. Bettie Melton had died intestate, and that there was no administra- tion on her estate and no necessity existed for such; that the defendants, other than W. G. Melton, constituted all of the heirs at law of Mrs. Bettie Melton, deceased, and that as such heirs they had inherited jointly the community interest in the real estate formerly owned by their mother.

The defendants pleaded the statute of limitations as against plaintiff's claim, and the plaintiff replied with a plea that on December 4, 1933, the defendant W. G. Melton and Mabel Melton, a daughter, one of the defendants, acknowledged in writing the justness of the debt and lien and a promise by W. G. Melton to pay the debt. That the acknowledgment and promise were contained in an application and another instrument in connection therewith, for a loan from the Home Owners' Loan Corporation, a federal loaning agency which we shall hereafter refer to as HOLC. The documents, in which it is claimed contained language which would defeat the plea of limitation, are as follows:

"Application for Loan.

"$1827.31

"1. The undersigned hereby applies to Home Owners' Loan Corporation for a loan in the amount stated above on terms provided in the Home Owners' Loan Act of 1933 [48 Stat. 128], and represents that all statements made in this application are true, and agrees to furnish said corporation with a first lien on the property herein described, as provided in said act, if this transaction can be consummated.

"2. A plan of the property is indicated at the right, showing its location, and the full legal description of the property is as follows: Lots Seventeen (17) and Eighteen (18), Block Nineteen (19), Fairmount Addition to the City of Fort Worth (at this point was inserted a simple sketch showing location of lots in the block and adjacent streets).

"3. The address of the property is 1935 Hurley Avenue, Fort Worth, Texas. (4 to 10 inclusive describe the house, paving, utility connections, etc., in some detail.)

"11. The total incumbrances or liens on the property are to parties and for amounts as follows: Sixteen Hundred Eighty-eight and 48.100 ($1688.48) Dollars, Marie V. Smallwood.

"12. Unpaid taxes and assessments as follows: ½ of 1932, $52.99 and all of 1933, $85.84. (13 gives age of applicant and a character reference.)

"14. I warrant the foregoing information to be true, request the consideration of this application, and agree to pay any cost actually incurred for reasonable appraisal, examination and perfecting of title, survey, recording, or other necessary expenses, such work to be done by my agent, selected by the corporation, and I agree to execute all necessary papers on their usual form as used by the corporation in connection with the transaction. (15 represents that the applicant has made no other application for a loan to the corporation.)

"This 4th day of December, 1933.
"[Signed] W. G. Melton
  "L. M. Hogue (son-in-law)
  "Mabel Melton (daughter)."
"Statement of the Amount of
   Indebtedness.

"Home Owners' Loan Corporation ——— 1934 ——— Texas. Re: Application #41-10278.

"For your information and guidance, after deducting all payments, off-sets and credits to which the obligor is entitled you are advised that the undersigned holds a balance of $1699.43, including interest up to 12-31-34, said indebtedness being as follows:

"Principal ................ $1633.73
"Interest ................. ·· 65.76
"Attorney's fees due .......
"Insurance advanced by
 Mortgagee ....·..........
"Amount of interest accru-
 ing each day hereafter..  10.95 Mo.

"Said indebtedness is secured by a valid First lien, described in Transfer of V. L. Note recorded in Vol. 1036, page 205, of the Deed Records, Tarrant County, Texas.

"The Mortgagee has heretofore agreed to accept $——— in bonds.

"The exact address of the Mortgagee is as follows:

"Name Marie V. Smallwood Street 1827 Hemphill Street, City of Fort · Worth, Texas.

"For your further information we state that there is now in force the following insurance:

    Fire
Company or Storm Amount Expires

"Record title to said property, insofar as we are advised, stands in the name of ———, ———, Texas.
"Very truly yours,
"[Signed] Marie V. Smallwood, Mortgagee
  "By Wm. P. Smallwood, Agent.

"The above balance of indebtedness, and the character of lien securing the same is, within my knowledge, and the knowledge of each of us, correctly stated. This statement is made to induce Home Owners' Loan Corporation to rely on the truth of the facts stated, and to induce it to make the loan for which we have severally applied.
"Witness to signature of applicants:
"[Sgd.] E. H. Wallis  [Sgd.] W. G. Melton."

It is agreed in the record that upon these pleadings and evidence, along with the agreement in the statement, the court should determine the issues. The trial court rendered judgment in favor of the defendants on their plea of limitation upon the theory as stated in his conclusions and embraced in the agreement of the parties "that the evidence shows that the statement of the debt was for the purpose of obtaining Government bonds with which to pay plaintiff's debt, and since the purpose for which said statement was made, failed, it was a conditional transaction and the condition having failed the statement of said indebtedness was not effective for any other purpose."

With proper exceptions to the action of the court in rendering the judgment, plaintiff has perfected an appeal to this court and frankly admits in her brief the only two questions presented for this court's determination are: (1) Was either HOLC instrument a sufficient acknowledgment by the defendant W. G. Melton to revive the debt as to him? (2) Was the execution and signature of the HOLC application by the defendant Mabel E. Melton a sufficient acknowledgment to make her interest in the real estate subject to foreclosure?

There can be no question but that the debt and lien sued on were barred by limitation unless the facts under the agreement toll the statute on this subject, and we shall therefore pay our respects to this phase of the case.

Article 5539, Rev.Civil Statutes, provides: "When an action may appear to

be barred by a law of limitation, no acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the case out of the operation of the law, unless such acknowledgment be in writing and signed by the party to be charged thereby."

This article of our statutes has been before the courts many times for consideration, but it is claimed by all parties that the precise question involved in this case has never been heretofore presented. Strictly speaking, we are inclined to agree with them, especially in view of the fact that the alleged acknowledgment was made to a Federal Loaning Agency with a view to obtaining a new loan, or, to put it in another way, with a view of inducing that agency to issue its bonds to the holder of an indebtedness in lieu of her debt and permit the debtor to pay the Federal Agency an agreed amount. But, as we understand it, the principle involved in the alleged acknowledgment of the debt has been discussed and determined by the courts of this state.

Acts of Congress creating the Home Owners' Loan Corporation provides means by which that agency could aid citizens who owed money on their homes, by extending time of payment over a period of years with perhaps smaller installment payments and at a lower rate of interest, provided the creditor would accept the Agency's bonds of a designated kind in lieu of the note and security held, and transfer to the Agency the indebtedness and lien securing it. The act also permits the Agency to employ all reasonable means to ascertain the validity of the debt and security, and it is made optional whether under all the facts obtained it shall extend its aid. The "Application" and "Statement of the Indebtedness" were two instruments prepared by HOLC and required to be filled out by the parties, as a prerequisite to it determining whether or not it would extend the aid primarily to the applicant, and to the creditor if she chose to accept the bonds under the terms proposed.

It would not be proper to determine the question before us strictly as put by appellant, that is: "Was either HOLC instrument a sufficient acknowledgment by the defendant W. G. Melton to revive the debt as to him?" for the reason we must consider both instruments together along with other agreed facts in arriving at the effect of either. We must discover if we can from the agreed testimony before us what they each intended to do. This we think can be done.

It is said in Texas Jurisprudence, vol. 28, § 160, p. 257: "Many Texas decisions establish the rule that acknowledgment, to relieve a claim from the operation of the statute of limitations, must not only contain an unqualified admission of a subsisting indebtedness, but it must also express a willingness to pay. Such a promise, in a proper case, may be implied from a recognition of the debt." Citing many cases in this state both by our Courts of Civil Appeals and the Supreme Court to which we refer.

One of the most recent cases cited by Texas Jurisprudence, supra, is York v. Hughes (Tex.Com.App.) 286 S.W. 165, 167. That suit involved an acknowledgment of a debt that was barred by limitation, accompanying which acknowledgment were certain conditions under which the debtor would pay. Discussing the proposition the court said: "In order to remove the bar of limitation from a barred indebtedness, there must be a new promise to pay same, evidenced by writing on the part of the debtor. The liability of the debtor, in such a case, depends, not upon the old obligation, but upon the new promise. This new promise need not be expressed in the writing, but may be implied from what is written. An unqualified and unequivocal acknowledgment in writing on the part of the debtor, of the existence of the indebtedness, unaccompanied by expressions indicating an unwillingness to pay same, will raise the implication of a new promise to pay the indebtedness. But if the acknowledgment of the existence of the indebtedness be qualified by an expressed promise to pay same conditionally, a promise different from the one so expressed will not be implied. In such a case the fulfillment of the named condition becomes a prerequisite to the debtor's liability on the new promise. Salinas v. Wright, 11 Tex. 572; McDonald v. Grey, 29 Tex. 80; Webber v. Cochrane, 4 Tex. 31; Smith v. Fly, 24 Tex. 345, 76 Am. Dec. 109; * * * Howard v. Windom, 86 Tex. 560, 26 S.W. 483." This rule seems to be well established as indicated by the early cases cited above.

■ A conditional promise to pay, accompanying an unequivocal recognition of

the justness of the debt, will repel the implication made by law that the debtor will pay when he acknowledges the debt without condition; and the creditor must rely, if at all, upon the conditional promise to pay, and this only when he is in a position to prove the condition imposed by the promise has been met.

It was said in McDonald v. Grey, supra: "The terms upon which the debtor predicates his promise or undertaking to pay such a debt are entirely within his own option and discretion, and the creditor can only avail himself of the new promise upon the stipulations with which it is coupled by the debtor; and the burden of showing that this has been done is upon the creditor."

There are many decisions by our courts which hold that when a written acknowledgment of the justness of the claim is made and signed by the debtor, but accompanied by a conditional promise to pay, such as when the debtor is able and similar expressions, the creditor must show the conditions and contingencies named have happened before he can depend upon the promise to take the case out of the statute. See L. D. Powell Co. v. Lee (Tex.Civ.App.) 257 S.W. 308; Lang v. Caruthers, 70 Tex. 718, 8 S.W. 604; American Exchange Nat. Bank v. Keeley (Tex.Civ.App.) 39 S.W.(2d) 929, and cases there cited. In such cases we think there can be no implication of a promise to pay on any other conditions than those named, even though there be an unequivocal acknowledgment of the justness of the debt.

■ As we understand the contention of appellant, there is no serious objection to the application of this rule to the case at bar, but what we have said and the authorities upon which we have based our conclusions have been given for the reason we believe both instruments as a whole should be considered along with the disclosed intention of the parties and that no particular statement or clause in either of the instruments should be segregated, and, when read, taken to constitute an acknowledgment of the debt from which the law will imply a promise to pay. See 10 Tex.Jur., § 184, p. 320.

It is said in Tex.Jur., vol. 28, p. 258, § 158: "If there be accompanying circumstances which repel the presumption of a promise or intention to pay, or if the expression be equivocal, vague and indeterminate, leading to no certain conclusion, but at best to probable inferences only, a writing does not amount to a sufficient acknowledgment," citing Smith v. Fly, supra, and York v. Hughes, supra.

■ In arriving at the intention of the parties at the time the two instruments relied upon were executed, we must assume they all knew the provisions of the act of Congress under which HOLC could entertain and consider the application made by Melton for a loan. In fact, the agreed statement between the parties, upon which this case is submitted to this court, shows the plan by which HOLC was to be substituted for appellant as mortgagee, was that she was to transfer her note and lien to HOLC and it was to thereafter take a new note and lien from the debtor, and under this arrangement appellant agreed to accept bonds of HOLC in payment of her debt. All this indicates the parties had actual notice of the manner in which HOLC did business under the acts of Congress creating it. This sheds light on the conditions under which W. G. Melton made acknowledgment of the debt and explains the manner in which he would pay, that is, he would pay out of a particular fund or out of bonds to be delivered by HOLC; it further explains the knowledge appellant had that this payment would be made in bonds if the loan should be consummated.

The two written instruments in question, it appears, were a part of the plan and system promulgated by HOLC as a prerequisite to its consideration of a proposed loan.

The application shows it was made and the loan requested on terms provided in the Home Owners' Loan Act of 1933 and represents that all statements made therein are true, and further binds the applicant to do certain things "if this transaction can be consummated."

The second instrument known as "Statement of Indebtedness" is addressed to HOLC and starts out by saying: "For your information and guidance," etc., and shows there is a balance unpaid on the indebtedness in principal, $1,633.73, and in interest, $65.76. This instrument is signed by the creditor, and there is attached thereto the following: "The above balance of indebtedness, and the character of the lien securing the same is, within my knowledge, and the knowledge of each of us, correctly stated. This statement is

made to induce Home Owners' Loan Corporation to rely on the truth of the facts stated, and to induce it to make the loan for which we have severally applied." Signed, "W. G. Melton."

If we were to segregate a part of the last-quoted portion of the instrument and use it in connection with another part which states the amount of the indebtedness and disregard everything else, we would have a rather definite acknowledgment of the debt by W. G. Melton, and under the rule of law heretofore mentioned in this opinion, could imply his promise to pay. But the whole transaction, as we have seen, was one to induce the HOLC to intervene and make a loan such as it was authorized by Congress to make and to issue its bonds to plaintiff in lieu of her note and mortgage, and the most that can be said of the promise to pay is that Melton will pay if and when "this transaction can be consummated" with HOLC. It also meant that payment should be made in bonds issued by HOLC if and when the transaction should be consummated.

Aside from the fact that the law imputes to appellant knowledge of the conditions under which HOLC could make a loan and the only manner in which it could purchase the debt of a creditor, the agreed statement of facts shows she was familiar with all these conditions and manners of payment and had agreed that she would take payment in that way. It must follow that if under the agreed facts appellant was to be paid out of bonds to be issued by HOLC, then this is the manner in which W. G. Melton had promised to pay. They both knew the issuance of bonds by HOLC depended upon the consummation of the loan. It was agreed the loan was never made, and, consequently, no bonds were issued with which to pay appellant as under the agreement.

We have already seen under the authorities referred to in this opinion that to relieve the operation of the statute of limitations, there must be an acknowledgment in writing of the justness of the claim, coupled with a promise to pay, but that in the absence of any expression of intention not to pay, or to pay under certain conditions, the law will imply the intention to pay. This implication is taken out of the case before us when the parties have agreed upon the manner, conditions, and terms of payment, that is, that Melton should make application for a loan from HOLC, and if consummated, appellant would take her pay in bonds to be issued as the proceeds of such loan.

It is clear to us that under the written instruments, along with the agreed facts surrounding their execution, the only promise made by Melton to pay the debt that can be imputed to him was that he would pay out of the proceeds of a loan from HOLC, provided one could be had. It is agreed the loan was not made, and of course the conditions under which payment was impliedly promised by W. G Melton did not happen. The law is well settled in this state that if a promise is made to pay a debt that is barred by the statute of limitations, conditioned upon the happening of some event, before the creditor can recover he must allege and prove the condition or event, upon which the promise was made, had happened.

We think the same rule of law applies to the facts of this case as would be applicable to a case if the debtor would say in writing to his creditor, "yes, I justly owe the debt and will pay it as soon as I am able; I will pay it when I collect a certain obligation owing to me; I will pay it as soon as I realize on certain properties in which I am interested; or, I will pay it if I make enough out of my present cotton crop." These conditional promises have been held to be sufficient when the creditor could show the contingency relied upon had transpired. In effect, appellee Melton said to appellant in the written instrument: "The amount you claim is a just debt and I will pay you in HOLC bonds issued by that agency if it will make me a loan." The appellant, being unable to prove the loan was made and the bonds issued, failed to meet the requirements of law imposed in such cases. We think there was no error in the conclusions of law reached by the trial court when recovery by appellant was denied.

What we have said disposes of the second question submitted for our determination relative to appellant's right of foreclosure of the lien as against the interest of Mabel Melton in the lands upon which the vendor's lien previously existed.

All assignments of error are overruled, and the judgment of the trial court is affirmed.