## BEELER v. HARBOUR.

### No. 13746.

Court of Civil Appeals of Texas. Fort Worth.

April 15, 1938.

Rehearing Denied May 20, 1938.

B. D. Sartin, of Wichita Falls, for appellant.

Stine, Bunting & Stine, of Henrietta, for appellee.

SPEER, Justice.

Appellee, Ollie Harbour, a feme sole, sued appellant, C. M. Beeler, in the district court of Clay county, Tex., on the 6th day of January, 1937, on a promissory note for the principal sum of $435.60, with certain credits thereon, dated March 18, 1921, due January 1, 1922; the action was also upon a vendor's lien note, dated November 1, 1916, and due January 1, 1920, for the principal sum of $340.16, secured by a lien on described real estate, alleged to have been pledged and delivered to appellee as collateral security to the first-mentioned promissory note.

It was averred that appellant did not merge the fee title with the subsequently acquired equitable title when he took up said outstanding notes; that appellant represented the note to be valid and that it was secured by a vendor's lien on the real estate described therein; that appellee relied upon the acts of appellant in said transaction; and that he is now estopped to deny the legal and binding effect thereof.

Appellee alleged that appellant, by a written instrument, of date January 10, 1934, acknowledged the justness of both obligations and a promise to pay.

It is alleged the vendor's lien note, which was held as collateral security, was executed by R. V. Tucker as a part of the purchase money for the real estate, and that in a deed of conveyance from Tucker to Beeler (appellant) on November 30, 1917, appellant assumed to pay the note, along with others of a series of like kind.

Prayer was for judgment for the amount found to be due on the promissory note, and for a foreclosure of the vendor's lien against the real estate for the amount of principal, interest, and attorney's fees, represented by the vendor's lien note so held by appellee.

Appellant answered, first, by a plea in abatement to appellee's action, because Tucker, the maker of the vendor's lien note sued on, was not made a party defendant; second, by general denial and special pleas of limitation, alleging that while it is true he assumed the payment of the vendor's lien note when he purchased the property from Tucker, that he paid off and fully discharged the note at its maturity in 1920, and held a release from the payee of the debt and lien securing it. He specially pleaded that the note was placed with appellee after its maturity and payment; that appellant advised appellee at the time of its delivery that the note was paid and was of no force and effect. He further pleaded that the property upon which a lien was asserted to secure the vendor's lien note was his homestead at the time it is claimed by appellee a renewal and extension of the note and lien was made in 1934, and that any attempted lien created thereby was void, under the Constitution of this state. Further answering, appellant alleged he no longer owned the property, but had conveyed it to his two daughters, Mattie L. Beeler and Della Beeler, and that his said daughters were at the time of filing the answer the owners and necessary parties defendants. Prayer was that the suit be abated and dismissed, in the alternative that plaintiff take nothing, and that he recover his costs.

The pleas in abatement and general demurrer were overruled by the court, to which action exceptions were duly preserved.

Trial was had to the court without the aid of a jury, and upon hearing the testimony, the court entered judgment for appellee for the amount of her debt and a foreclosure of the vendor's lien as against the real estate as prayed for. Motion for new trial was overruled, and appeal was perfected by appellant, Beeler.

No findings of fact and conclusions of law were requested, and none were filed. In the body of the judgment, the court found the amount of the vendor's lien note was greater than the amount unpaid on the promissory note and foreclosed the lien on the real estate to satisfy the amount due on the promissory note, and found appellant did not intend to merge the title formerly held by him with that acquired when he took up the collateral note, and that by his conduct, relied upon by appellee, he was estopped to assert, upon the trial, that he did intend the merger.

Many interesting points are raised by the parties in the record and their briefs, but we think they may be properly disposed of by a determination of the three questions raised by appellant by assignments in his brief. They are:

1. Was the letter written by appellant to appellee on January 15, 1934, a suffi-

cient acknowledgment of the justness of the debts to toll the statute of limitation and renew and extend the lien securing the collateral vendor's lien note?

2. Were R. V. Tucker (the original maker of the vendor's lien note) and the two daughters of appellant, necessary parties to the suit, and should appellant's pleas in abatement have been sustained, because they were not parties?

3. Did appellant intend, at the time he took up the collateral note from the then owner and payee, to merge the title acquired from Tucker by deed, in which he assumed the payment of the outstanding note; and did his conduct and acts in the matter of the transaction with appellee estop him from asserting such intention, when this suit was filed?

By article 5539, R.C.S., it is provided that when an obligation has become barred by limitation, "no acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the case out of the operation of the law, unless such acknowledgment be in writing and signed by the party to be charged thereby."

Article 5522, R.C.S., is applicable to the extension and renewal of obligations secured by liens on real estate and provides generally that such renewals and extensions shall be in writing, sealed and recorded, as in cases of real estate conveyances, but as between the parties, where the rights of third parties have not intervened, the same rule does not prevail, in such cases; this is said: "Provided the owner of the land and the holder of the note or notes may at any time enter into a valid agreement renewing and extending the debt and lien, so long as it does not prejudice the rights of lien holders or purchasers, subsequent to the date such liens became barred of record * * *."

The letter from appellant to appellee, claimed by the latter to be a renewal and extension of the two notes and lien, is as follows:

"Byers, Texas, Jan 15, 1934
"Miss Ollie Harbour
"Byers, Texas,
"Dear Miss Harbour:
"Your letter dated Jan. 10. rec and contents noted. I am sinding you sixteen dollars all the money I have at present I am trying to get a lone on place done know for sure I can get it if I can't will see you soon and try to arange a way to guet you some more cash and arange the papers so you will feel safe as those papers are all out of date this dont make any difference with me as I intend to pay you as soon as I can I will see you as soon as I can give cred on note if there is room hope to be able to pay you more before long. With best regards,

"C. M. Beeler."

It is contended by appellant that this letter is too indefinite in its nature to constitute a promise in writing to pay, and take the obligations referred to therein out of the bar of limitations. It is claimed that even though it be sufficient to renew the promissory note obligation, it is not a promise to pay the vendor's lien note. That to construe the letter as a renewal of the note secured by the lien would in effect be the creation of a lien on the homestead, in violation of the State Constitution, article 16, § 50. We think appellant is wrong in these contentions. It will be noted by the letter, after explaining why he had not been able to make further payments, he says: "those papers are all out of date this dont make any difference with me as I intend to pay you as soon as I can." Clearly, by the expression "those papers are all out of date," the promissory note, as well as the vendor's lien note, were referred to. The evidence shows that these two notes are all the papers appellee then held, in which appellant was interested; he testified that he had reference to the notes sued on when he wrote the letter.

There are no set words or form of a promise prescribed either by statute or judicial constructions, to be met, in order to bring a transaction under the terms of the statute above quoted. It has been many times held that the promise to pay will be presumed, when a party acknowledges the justness of a barred debt, and does not express a disinclination to pay, or promise conditionally to pay. 28 Tex.Jur. p. 257, § 160; York v. Hughes, Tex.Com.App., 286 S.W. 165; Stein v. Hamman, 118 Tex. 16, 6 S.W.2d 352, 9 S.W.2d 1104; Elsby v. Luna, Tex.Com.App., 15 S.W.2d 604; Smallwood v. Melton, Tex. Civ.App., 97 S.W.2d 781, writ dismissed. In the instant case, the appellant wrote that he intended to pay as soon as he could. If, as above stated, the rule is established in this state that when a person acknowledges the justness of the debt, the law will imply his promise to pay, we

can see no reason why we cannot as safely say that when one promises to pay, we may presume he acknowledges the justness of the debt. It is contended that the promise to pay is not an unconditional one, but that he will pay as soon as he becomes able. While this is true, yet the condition attached only serves to place an additional burden upon the plaintiff to show he is able. Howard v. Windom, 86 Tex. 560, 26 S.W. 483; Smallwood v. Melton, supra. The burden of proof thus imposed was discharged in this case, if the letter was a sufficient renewal and extension of the vendor's lien note held as collateral security.

■ By the language of article 5522, above quoted, relating to renewals of obligations secured by liens on real estate, it will be observed that it provides the owner of the land and holder of the note may enter into agreements as to such renewals and extensions, so long as they do not invade the rights of subsequent purchasers after the record lien is barred. No rights of third persons are involved in this case; hence, a written promise to pay the barred debts would be equally as effective upon the secured debt as upon the promissory note. The renewal obligation as between the parties, absent intervening rights of third parties, need not be acknowledged and recorded. Hoya v. Self, Tex.Com.App., 245 S.W. 424; Russell-Coleman Oil Mill v. Johnson, Tex.Civ. App., 287 S.W. 134; Hall v. Hix, Tex. Civ.App., 297 S.W. 491, writ refused; Watson v. First Natl. Bank, Tex.Com.App., 285 S.W. 1050. In the last case cited, the court gave a very full discussion of the several articles of the statute which refer to renewals and extensions of obligations secured by liens on real estate, and there made the timely announcement of the equitable principle involved, in the following language (page 1053): "We think we should not turn a deaf ear to considerations of equity and right. Our ruling, in cases of doubtful construction, should always be in favor of enforcing and upholding honesty and fair dealing in the relations between men." We are not unmindful of the rule of equity which rewards the diligent, but this rule does not go so far as to require the courts to unnecessarily penalize a person who has been generous enough to carry another's obligation until it is barred by limitation, perhaps in the hope that honesty will prompt that person to renew the obligation, and when an honest attempt is made to do that, prevent him from doing so when not in violation of some recognized law. In this case, appellee's confidence in appellant's integrity was rewarded, by the latter's expression to the effect that because the notes were out of date made no difference to him, he still intended to pay them; both parties have done the magnanimous thing, and it is our duty to encourage and uphold such acts when consistent with law.

■ We revert now to the contention made by appellant that the renewal of the vendor's lien obligation was in violation of the provisions of the Constitution inhibiting the creation of a lien on the homestead, except for the purposes therein named. It is an undisputed fact that the note was given for a part of the purchase money of the real estate, and in its inception was secured by a valid lien. The lien securing a note lives and dies with the obligation it secures; it follows the debt; the renewal of the debt renewed the lien, and did not create a new lien. Bellamy v. Okla. Farm Mortgage Co., Tex.Com.App., 278 S.W. 180. It was held in Jackson v. Bradshaw, 24 Tex.Civ.App. 30, 57 S.W. 878, writ refused, that in the absence of fraud on the wife, the husband alone could renew and extend a purchase money note against the homestead after it was barred by limitation. It follows that the assignments raising the questions embraced within our first inquiry must be overruled.

■ There is no merit in appellant's assignments of error in which he complains of the action of the court in overruling his pleas in abatement. The first plea was that Tucker, the maker of the vendor's lien note, was a necessary party. This action was against appellant on that vendor's lien note upon the theory that he assumed its payment in the deed under which he took the land; that he subsequently purchased the note from the payee and, declining to merge that title with the one he had purchased, reissued the note by putting it into circulation in the manner set out in the petition. Under such a condition, Tucker would not be interested in the result of the suit between these parties, since no relief against him was sought.

■ The second plea in abatement was based upon the fact that the appellant was not the owner of the land upon which

a lien was sought to be foreclosed, but that his two daughters named in the first part of this opinion had purchased it from him. The facts disclosed upon the trial show the deed of conveyance was dated a few days prior to the institution of the suit and the issuance and filing of the lis pendens notice, but was not executed and delivered until thereafter, and for that reason the daughters, as purchasers from appellant, were not necessary parties to the suit, and no error was committed in refusing to sustain the pleas.

The remaining question before us is third above, that is, did appellant intend to merge the two estates, the one acquired when he purchased the land and the other, by paying the outstanding note and lien? The trial court found he did not so intend, and we think there is evidence to support the finding.

The testimony shows that the transaction of borrowing the money from appellee by appellant was handled exclusively between appellant and the appellee's father, deceased at the time of the trial. Appellee knew nothing of the negotiations between them; that she gave her father a check for the money when he brought the promissory note and collateral security to her; she depended upon him to properly handle the matter; that she assumed the collateral note was good and relied upon it as security for the payment of the debt; that she would not have made the loan but for the attached security. The appellant testified that he had dealt with appellee's father in the matter of the loan; that he told appellee's father, when asked for security, that he had in his possession some vendor's lien notes against his property which had been paid off and didn't know if they were worth anything or not, but would let her have them; he testified that the father also said he didn't know if they were good or not, but that the paper would look better if it had the collateral attached. Appellant further testified he delivered the collateral note to Mr. Harbour to secure his obligation given for the borrowed money; he admitted writing the letter above quoted, and said he referred in it to these notes held by appellee.

The record also discloses that the vendor's lien notes which were outstanding against the land were paid by appellant at their respective maturities, and taken into his possession at that time, and that no cancellation marks or stamps were made thereon, nor was there any release taken by him.

 It cannot be successfully contended that appellant did not acquire two separate and distinct titles to the property. He had the right to determine whether or not he would merge these titles. His intentions, as evidenced by his acts, will largely control in determining whether there was a merger.

 In Ferguson v. Ragland, Tex.Civ. App., 243 S.W. 721, writ refused, it was said (page 724): "Mergers of estates are not favored in equity, and in equity the question as to whether estates merge depends largely upon the intentions of the parties and the circumstances, and whether justice requires that they be kept separate." Many authorities are there cited to support the statement. It was further said in that case: "The defense of merger here, if sustained, would be allowing appellees by the rankest technical rule to escape the obligations of his contract." This last principle may be applied with equal force to the instant case. Here, appellant went out and acquired the second title by taking up the purchase-money notes against the property, and again putting into circulation one of the notes (secured by the title acquired with it), a thing he had a legal right to do, under the Negotiable Instrument Act, article 5934, § 50, R.C.S. Having done this, to permit him fifteen years later to say he intended to merge the titles at the time of taking up the notes would be to sanction a type of conduct to which the courts will not lend their aid. The authorities collated in 17 Tex.Jur. p. 122, § 27, support our conclusions on this point. To the same effect is the rule announced in Burdick on Real Property, at page 533, § 209, supported by numerous authorities in other jurisdictions.

 It is insisted by appellant that his statements to appellee's father as to value or doubtful value of the collateral note at the time it was pledged affirmatively established appellant's intention to merge the two estates. In fact, since appellee's father, with whom the transaction was had, was dead at the time of the trial, and appellee was thereby deprived of the benefit of his testimony, we seriously doubt if appellant's testimony on the point

was admissible in evidence, Wootton v. Jones, Tex.Civ.App., 286 S.W. 680, writ dismissed; yet no objection was made to the testimony and it was before the court for what it was worth. Edwards v. White, Tex.Civ.App., 120 S.W. 914; Farias v. Salas, Tex.Civ.App., 244 S.W. 1115, writ dismissed. The trial was before the court, and by the judgment entered that phase of appellant's testimony was disregarded, and his acts were considered as preponderating over his words, and he was held estopped to repudiate his conduct. This the court had a right to do. The evidence was sufficient to support such finding, and the law presumes those facts were relied upon to support the judgment rendered. Article 2190, Vernon's Tex.Civ.St.

There is one other assignment which complains of the introduction in evidence of the vendor's lien note, over the objection that it was not shown to be indorsed, transferred or assigned to appellee. The allegations of appellee were that the note was "transferred, assigned and delivered" to appellee; the appellant admitted its delivery for the purposes which we have shown above. His deed showed he had assumed its payment, and we see no error in its admission in evidence. All assignments of error must be overruled, and the judgment of the trial court affirmed, and it is accordingly so ordered.