## BADGER OIL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9725.

Circuit Court of Appeals, Fifth Circuit.

April 8, 1941.

Rehearing Denied May 10, 1941.

Ross M. Lambdin and Walter G. Russell, both of Amarillo, Tex., for petitioner.

Lee A. Jackson and Sewall Key, Sp. Assts. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Ellyne E. Strickland, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The taxpayer, Badger Oil Company, owning a producing oil lease on Texas land, and having afterwards acquired title to the fee in the land except about one-third of the one-eighth royalty, in the tax year 1935 transferred the lease to International Petroleum Corporation for $200,000 in cash and $165,000 in secured notes which were paid off during the year. Of the $365,000 received, $60,000 was for personal property, $305,000 for the oil property. The taxpayer claimed a percentage

deduction for depletion against the $305,-000, but it was denied by the Commissioner and by the Board of Tax Appeals. The correctness of that ruling is now for decision.

Taxpayer insists that because it owns the reversionary fee in the land and an attendant royalty, and because it might have made to International a new lease on the land, receiving a bonus and retaining the same royalty, both depletable, the money it got in this transaction is equivalent to bonus and depletable according to Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489. It is suggested alternatively that a merger of the lease occurred when the taxpayer acquired the fee in the land, so that what was in form an assignment of the old lease to International was in substance the creation of a new one.

The Commissioner contends there was no merger, that the taxpayer, owning two interests in the land, sold its leasehold interest for money; and that the consideration received is not depletable income from oil property under the decisions in Commissioner v. Fleming, 5 Cir., 82 F.2d 324; Hammonds v. Commissioner, 10 Cir., 106 F.2d 420; Helvering v. Elbe Oil Land Development Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904; Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277. He admits of course that depletion is allowable on the receipts from the royalty reserved to the original lessors, two-thirds of which the taxpayer still owns.

We look first at the question of merger. In 1921 the original lessors made the lease to J. B. Martin, reserving the usual one-eighth royalty. In 1926, this taxpayer acquired the Martin lease. The lessors sold to others interests in the royalty amounting to about one-third of it. They made deeds, duly recorded, by which they "granted, sold and conveyed (an undivided fractional interest) in and to all the oil, gas and other minerals in and under and that may be produced from" the described lands; "said land being now under an oil and gas lease of record, this sale is made subject to the terms of said lease, but covers and includes (the fractional interest) in the royalties; * * * provided however the original term of said oil and gas lease shall not be extended without the written consent of the grantee first having been obtained." There was also a recital: "It is intended that the grantee herein shall receive no part of any rentals paid under the terms of exist-ing or future oil and gas leases or in any bonuses or bonus money that may be paid for future leases, * * * but the grantee shall always be entitled to receive (the fractional interest) of one-eighth of the oil, gas and minerals produced from said land." After making these deeds, the lessors on April 17, 1934, conveyed their remaining interests in the land to the taxpayer. The taxpayer on February 15, 1935, made to International the transfer of the lease now in question. The deed recites the lease to Martin and its acquisition in 1926 by the taxpayer, who for a recited consideration "does hereby bargain, sell, transfer, assign and convey unto International Petroleum Corporation all right, title and interest of the original lessee and present owner in and to said lease, and rights thereunder, in so far as it covers the following described land * * * together with all oil, gas and other minerals produced and to be produced therefrom to the credit of the leasehold interest" after a named day and hour. No royalty of any sort is reserved.

We think it clear that the Martin lease was never extinguished by merger. When the taxpayer in 1934 acquired the lessors' interests it did not acquire the entire fee in the minerals, because one-third of an eighth interest in them was outstanding in others. These others had a right to receive one-third of the royalty under this very lease, and to have it remain of force. Their deeds, under Texas law, gave them title to fractional interests in the minerals in place, though this lease should come to an end. The entire title to the minerals thus never vested in the taxpayer. But if it had, the interests separately acquired could be maintained unmerged if so intended and desired. Baylor University v. Chester Sav. Bank, Tex.Civ.App., 82 S.W. 2d 738; Coleman v. Looney, Tex.Civ.App., 83 S.W.2d 1061; Beeler v. Harbour, Tex. Civ.App., 116 S.W.2d 927; Caprito v. Grisham-Hunter Corp., Tex.Civ.App., 128 S.W.2d 149; Factor's & Traders' Ins. Co. v. Murphy, 111 U.S. 738, 4 S.Ct. 679, 28 L.Ed. 582. The Board has found as a fact that no merger was intended, and the formal transfer within a few months of the lease as still existing abundantly proves it.

The taxpayer contends it could have made a new lease with a new bonus and royalty. In view of the outstanding mineral interests we think this doubtful. But if so, a new lease was not made; the

old one was transferred. Taxes are governed by what was done, not by what the taxpayer might have done and afterwards wishes he had done. This taxpayer, owning reversionary interests and accompanying royalty, and owning also this lease, chose to retain the former and sell the latter. It retained as vendee of the lessors an economic interest in the oil reserve; and the royalties that it and others were to receive in the future of course involve depletion of that reserve, and are concededly reducible by the allowance for depletion. It sold to International the entire remaining interest in the oil reserve; and as it is depleted by production of the oil the income thereby accruing to International will also be reducible by a depletion allowance. The allowance for depletion is intended to return to the owners of the oil reserve the loss of their capital which enters into the sale price of the oil produced. It deals with income realized by production. It has no application to sales in whole or in part of the capital investment, the oil reserve itself. We can add nothing to what we said in Commissioner v. Fleming, 5 Cir., 82 F.2d 324. Judge Foster, who there dissented, approved the decision in Laird v. Commissioner, 5 Cir., 97 F.2d 730. So did the Tenth Circuit in Hammonds v. Commissioner, 106 F.2d 420. The Supreme Court has fully recognized that the consideration of a sale of oil lease interests where in the sale no overriding royalty or other proprietary interest in the oil in place is reserved, is a conversion of capital, and not the working of the lease for income, and that gains thereby realized are not reducible by a depletion allowance. Helvering v. Elbe Oil Land Development Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904; Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277. In Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199, the bonus paid to a lessor for the making of a lease, in addition to royalties reserved, was held to be an advance on royalties, and depletable income. In Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489, instruments of a mixed character were executed by lessees touching oil leases, but there was not an outright sale of the leases, but a one-eighth royalty was retained in addition to the royalty due to the original lessors. It was held that the retention of this overriding royalty gave character to the cash consideration paid, and made it a bonus depletable as additional advance royalty. In the transfer of a lease there must be such a retention of a royalty in order for a cash consideration to be advance royalty. The presence or absence of such overriding royalty we regard as marking the difference between Palmer v. Bender and the other cases above cited.

This taxpayer, after selling outright for money its lease interest, still had an interest in the oil reserve as the successor in title of the lessor, but that is not the same thing as retaining a royalty in the transfer. His two interests stood unmerged. He sold his lease interest without any reservation. What he got for it was purchase money. The interest he kept was that which the lessors had reserved fourteen years before. None of that royalty was paid in advance by International in this purchase. It all remained yet to be paid. There is no room to say that the money in this transaction was paid as advance royalty and hence is depletable income arising from the operation of the oil wells.

The decision of the Board is affirmed.