# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-01-00257-CV

---

**Allen Dennis Rambo, Appellant**

**v.**

**Marsha N. Rambo, Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. 91-9474, HONORABLE PAUL DAVIS, JUDGE PRESIDING

---

Dennis Rambo appeals the district court's order of enforcement related to issues arising from the parties' divorce decree. Raising five issues, Dennis contends that the district court erred in ruling that expenses incurred by his former wife Marsha Rambo on their daughter's behalf at the SUWS therapeutic program and the Mission Mountain School in Montana were health care expenses covered by the parties' 1992 divorce decree and that the court erred in ordering him to pay $21,978.28, the current balance owing of his one-half portion of those expenses. Additionally, Dennis contends that the district court erred in ordering him to pay a $7500 debt he was ordered to pay in the divorce decree because the statute of limitations had run and there was no written acknowledgment of the debt to take the debt out of the operation of the statute of limitations. We affirm the enforcement order.

### Background

Dennis and Marsha Rambo were divorced in August 1992. In October 2000, Marsha initiated this post-divorce enforcement action regarding two claims: (1) health care expenses she

incurred on behalf of the Rambos' daughter at the twenty-one day outdoor therapeutic program, SUWS, and the Mission Mountain School in Montana which Marsha contended Dennis was required to pay half of pursuant to the divorce decree; and (2) to enforce collection of a debt (the "Lanier debt") of $7500 from Dennis which had been assigned to her post-divorce.

### *Expenses for the SUWS Program and the Mission Mountain School*

In the enforcement action, Marsha contended that pursuant to the divorce decree Dennis was responsible for one-half of the expenses related to their daughter's participation in the SUWS Therapeutic Program and her attendance at the Mission Mountain School in Montana.

The divorce decree provides in pertinent part:

> As additional child support, [Dennis] is ordered and decreed to pay fifty-percent (50%) of all health care expenses not paid by insurance that are incurred by or on behalf of the parties' children, including, without limitation, medical, prescription drug, psychiatric, psychological, dental and orthodontic charges.
>
> This provision shall not be interpreted to include expenses for psychological testing, travel to and from the health care provider, or non-prescription medication.
>
> The decision to incur health care expenses shall be made solely by [Marsha]. The reasonableness of the charges shall be presumed upon presentation of the bill. Disallowance of the bill by a health insurer shall not excuse the obligation of [Dennis] to make payment.
>
> [Marsha] is ordered and decreed to furnish to [Dennis] copies of all statements and bills for health care expenses not covered by insurance, and [Dennis] is ordered and decreed to pay [his] share of the statements and bills within fifteen (15) days of receipt either by paying the health care provider directly or by reimbursing [Marsha] for any advance payment over and above her share of the expenses.

At the hearing, the only issue Dennis raised regarding these provisions was whether the expenses Marsha incurred for their daughter to participate in the SUWS program and attend the

2

Mission Mountain School were "health care" expenses under the decree. While acknowledging that it was Marsha's sole right to incur health care expenses on behalf of their daughters, and although he had paid Marsha $8500 toward the SUWS program and the Mission Mountain School expenses, Dennis complains that these expenses were "discretionary" expenses and he is not liable to pay one-half of discretionary expenses.

After holding a hearing, the district court made the following findings regarding the expenses for the SUWS program and the Mission Mountain School: (1) Marsha and Dennis's daughter incurred medical expenses not covered by insurance in the amount of $60,956.55; (2) Dennis's share of the expenses is $30,478.28 and he has paid $8500 leaving a current balance of $21,978.28; and (3) the expenses incurred were reasonable and necessary and should be considered medical expenses as that term is defined.

On appeal, Dennis contends that these expenses were discretionary and were not health care expenses. He contends that the evidence failed to show how the twenty-one day outdoor therapeutic SUWS program was administered, why it was incurred, whether it was necessary and whether a health care professional prescribed the program. Additionally, Dennis contends that there was no evidence that showed whether a licensed counselor or doctor administered either the program or the school. Although the statements of account from the Mission Mountain School reflect charges for therapy, tuition and other costs and services of the program and the school, Dennis contends that there is nothing on the statements indicating whether the school was for psychological, physical or health care needs or was simply a private school. Without such evidence, Dennis contends that the district court erred in ruling that the expenses were health care expenses for which he is liable for half.

3

We review a trial court's findings of fact for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the evidence supporting a jury's response. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). In reviewing an evidentiary complaint, we review the legal sufficiency of the evidence by first examining the record for evidence that supports the findings while ignoring all evidence to the contrary. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982). If there is no evidence to support the findings, then we examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* In reviewing the factual sufficiency of the evidence we first examine whether there is some evidence to support the findings; if so, then after examining the entire record, we will reverse only if the findings are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 706 S.W.2d 175, 176 (Tex. 1986).

At the hearing, Natalie, the Rambos' daughter, and Marsha testified about Natalie's life as a teenager and their experiences with the SUWS program and the Mission Mountain School. At age fifteen, Natalie was stealing, lying, manipulating, using drugs, alcohol, and tobacco, and running away from home. After several years of out-patient, psychological counseling which did not seem to help Natalie, Marsha, upon the recommendation of Rick Reynolds, a psychologist, decided to pursue a full-time, in-patient, therapy plan. The SUWS program was an intervention-type program whereby Natalie was taken to Salt Lake City and transferred into the custody of an adolescent program in which she participated in intensive counseling, team-building, self-reliance, and outdoor therapy. Concurrently, she completed the high-school curriculum at the Mission Mountain School in Montana. Natalie testified that the program was centered around daily counseling and therapy

4

sessions. According to Natalie, therapy permeated "everything down to meal time." Additionally, she testified that if she had not gone to the Mission Mountain School she would probably be dead.

We disagree with Dennis's suggestion that particular evidence not presented to the district court was necessary before the court could determine that the expenses for the SUWS program and the Mission Mountain School were health care expenses. Additionally, we disagree with Dennis's contention that there was no evidence showing that the program and the school were for psychological, physical, or health care needs. Natalie and Marsha provided testimony and evidence about how the SUWS program and the Mission Mountain School operated and how the experiences there had greatly impacted Natalie's life psychologically. Additionally, no evidence was presented to show that these expenses were incurred for any purpose other than to assist Natalie's psychological well-being.

We hold that the evidence presented was sufficient to support the district court's finding that the SUWS program and Mission Mountain School expenses were health care expenses under the divorce decree that were not covered by insurance, for which Dennis was responsible for paying half. Dennis's issues one through three are overruled.

### The Lanier Debt

In Dennis's fourth and fifth issues, he contends that the district court erred in ordering him to pay to Marsha over a period of time $7500, which he originally had been ordered to pay to Sidney Lanier under the divorce decree. Further he contends that the letter offered as evidence by

Marsha and which she asserts is his written acknowledgment of the debt was not sufficient as a matter of law to take the debt out of the operation of the statute of limitations.

The divorce decree ordered Dennis to pay

> one-half (1/2) of the debt due and owing to Sidney E. Lanier, Jr., and/or Bonnie Lanier incurred prior to July 1, 1991, said total sum being $15,000, one-half of which is the amount of $7,500.

Marsha states in her petition that Sidney Lanier never demanded that Dennis make a payment on this debt. Further, she states that Lanier formally assigned the debt to her in a proper written assignment on May 8, 2000. Marsha alleged that Dennis waived any statute of limitations defense when he acknowledged the debt and offered to pay her the $7500 debt over time in a letter he wrote to her dated August 1, 2000. Marsha seeks to enforce the terms Dennis set out in his letter of August 2000.

At the hearing, as evidence of the assignment of the debt, Marsha submitted a copy of a document titled "assignment of debt repayment" which was signed by Sidney Lanier and Marsha and dated May 8, 2000. It provided that Sidney Lanier assigned to Marsha "all rights, title and interest in and to the $7500 debt repayment due from Allen Dennis Rambo to Sidney Edward Lanier, as described in [the divorce decree]." Further, Marsha submitted a copy of a letter dated August 1, 2000, written to her by Dennis. Marsha contended that the following portions of Dennis's letter constituted his written acknowledgment of the $7500 debt:

> I'm writing you this letter to address the issue of Sid's loan, as documented in our divorce decree. At this time, full payment of the $7500 is impossible. However, I can pay you $4500 and send monthly installments of $200 each until the balance is paid in full. As far as interest on the loan, you will have to take me to court to receive that.

6

. . . .

Lastly, I would like a copy of all records showing the total expenditures on Natalie's stay at Mission Mountain School, including what was paid by insurance.

. . . . .

Also, before I send the $4500, I will have to have a copy of the loan assignment from Sid to you, as well as, the other items mentioned above. When these requests are met, I can either mail you the check or deposit it to your account.

Marsha accepted the payment terms Dennis proposed in his August letter. Dennis testified that although he had seen a copy of the assignment of the debt from Sidney Lanier to Marsha and copies of the Mission Mountain School invoices and he had received a written demand from Marsha's attorney to pay the $7500, he had not paid Marsha as he had proposed in his August 2000 letter.

Following the hearing, the district court ruled that Sidney Lanier properly assigned to Marsha his interest in the $7500 debt owed to him by Dennis under the divorce decree. Further, the court ruled that Dennis properly acknowledged the debt in writing and that Marsha accepted his payment terms. The court ordered Dennis to pay Marsha the $7500 according to the proposed payment schedule suggested in his August 2000 letter by paying Marsha $4500 within thirty days of the judgment and the $3000 balance in fifteen, equal, monthly installments of $200 per month. Additionally, the court ordered that all overdue payments shall bear interest at the rate of 12% per year until paid.

The statute of limitation for an action on debt is four years. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(3) (West Supp. 2002). However, section 16.065 of the Texas Civil Practice and Remedies Code provides the following:

An acknowledgment of the justness of a claim that appears to be barred by limitations is not admissible in evidence to defeat the law of limitations if made after the time that the claim is due unless the acknowledgment is in writing and is signed by the party to be charged.

Tex. Civ. Prac. & Rem. Code Ann. § 16.065 (West 1997). The parties do not dispute that the statute of limitations has expired on the debt.

In order for a written instrument to be sufficient to take a debt otherwise barred out of the operation of the statute of limitations, it must unequivocally and unconditionally acknowledge the justness of the debt and express a willingness to pay. *Bright & Co. v. Holbein Family Mineral Trust*, 995 S.W.2d 742, 745 (Tex. App.—San Antonio 1999, pet. denied); *see also Andrews v. Cohen*, 664 S.W.2d 826, 828-29 (Tex. App.—Tyler 1984, writ ref'd n.r.e.); *Siegel v. McGavock Drilling Co.*, 530 S.W.2d 894, 896 (Tex. Civ. App.—Amarillo 1975, writ ref'd n.r.e.). The effect of the acknowledgment is that it creates a new promise to pay the old debt by acknowledging and agreeing to pay the old debt. *Siegel*, 530 S.W.2d at 896. Once an acknowledgment is executed, the liability of the debtor depends not upon the old obligation but upon the new promise as expressed in the acknowledgment. *Id.* If an acknowledgment of the existence of an old debt is qualified by a conditional promise to pay, a promise different from the one so expressed will not be implied and the creditor must fulfill the named condition as a prerequisite to the debtor's liability on the new promise. *Andrews*, 664 S.W.2d at 829 (citing *York v. Hughes*, 286 S.W. 165 (Tex. Comm'n App. 1926)). Whether a written instrument sufficiently acknowledges a debt barred by limitations is a question of law. *Bright*, 995 S.W.2d at 745.

On appeal, Dennis contends that in his letter to Marsha he conditioned repayment of the debt on first receiving from her a copy of the loan assignment from Sidney Lanier to her as well

8

as receiving a copy of all records showing the expenditures on Natalie's stay at Mission Mountain School. He contends that because he never received these items from Marsha the condition had not been met, and thus a prerequisite to his liability on the new promise was not met. Further, he contends that because the prerequisite condition had not been met, he had not acknowledged the old debt or created a new promise to pay the debt. As authority for his proposition he relies upon *Andrews v. Cohen*, 664 S.W.2d 826 (Tex. App.—Tyler 1984, writ ref'd n.r.e.).

In *Andrews*, the debtor wrote the creditor a letter and conditioned repayment of the old debt on the creditor dismissing all lawsuits presently pending between the parties. *Id.* at 828. The creditor rejected this condition but then sought a ruling from the court that despite the debtor's new condition and the creditor's rejection of it, the debtor had nevertheless in the letter acknowledged the old debt and agreed to pay it. *Id.* The *Andrews* court held that because the creditor rejected the debtor's new condition for payment there was no willingness to pay expressed by the debtor and therefore the debtor had not acknowledged the old debt nor made a new promise to pay the old debt. *Id.* at 829.

In the case before us, in the August 2000 letter Dennis stated specifically that he would pay Marsha $7500 over time; Marsha accepted this proposal. Dennis's condition that he receive certain information before sending Marsha any money is distinguishable from the condition in the *Andrews* case where the debtor's condition was that all lawsuits be dismissed or he would pay nothing. Here, Dennis provided a proper acknowledgment that he owed $7500 to Marsha. Further, Dennis's condition that before sending Marsha a check he receive information about the expenses for the Mission Mountain School and a copy of the document assigning the Lanier debt to Marsha goes to the timing of *when* he would send payments to Marsha, and not to the issue about whether he

9

would pay her at all. Under Dennis's own terms in the August 2000 letter he acknowledged his liability to Marsha of the $7500; however, he was not obligated to send Marsha money until she provided him with a copy of the assignment and copies of the Mission Mountain invoices. Finally, according to testimony at the hearing, Dennis received copies of the invoices from the Mission Mountain School and a copy of the assignment of the debt from Sidney Lanier to Marsha.

We hold that in the August 2000 letter, Dennis acknowledged his liability for the old $7500 debt and promised Marsha that he would pay her the money over time thereby creating a new promise to pay the $7500. Further he testified that he received the requested information; he was therefore obligated to send Marsha money according to his proposed payment plan set out in his August 2000 letter. We find no error in the district court's order that Dennis pay Marsha $7500 according to the terms outlined in Dennis's August 2000 letter. Dennis's fourth and fifth issues are overruled. The order of the district court is affirmed.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:   January 10, 2002

Do Not Publish